**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN RE MARCILIN ANNE BENVIN,

No. 14-72181

MARCILIN ANNE BENVIN,
*Petitioner*,

D.C. No.
3:11-cr-00099-
RCJ-WGC-1

v.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA,
RENO,
*Respondent*,

OPINION

UNITED STATES OF AMERICA,
*Real Party in Interest.*

Petition for Writ of Mandamus
to the United States District Court
for the District of Nevada

Argued and Submitted
March 17, 2015—San Francisco, California

Filed June 29, 2015

Before: Diarmuid F. O'Scannlain, Marsha S. Berzon,
and Jay S. Bybee, Circuit Judges.

Per Curiam Opinion

# SUMMARY[*]

## Criminal Law/Mandamus

The panel granted a criminal defendant's petition for a writ of mandamus, and instructed the district court to reassign the case to another district judge, in a case in which the defendant asserted that the district court improperly interjected itself into plea negotiations.

The panel held that the district court's suggestion that the parties add a particular term to the plea agreement – *i.e.*, that the parties stipulate to a restitution amount of $3 million to resolve the district court's concerns that the alleged victims of dismissed counts would not otherwise be entitled to receive restitution – constituted impermissible involvement in plea discussions. The panel held that the district court also inappropriately involved itself in plea negotiations, in violation of Fed. R. Crim. P. 11(c)(1), when it imposed conditions on its approval of the government's proposal to dismiss counts.

The panel concluded that the factors set forth in *Bauman v. United States District Court* weigh in favor of granting mandamus relief, and that the appearance of justice will best be served by reassignment to a different judge.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Michael J. Kennedy, Chief Assistant Federal Public Defender, Federal Public Defender, Reno, Nevada, argued the cause on behalf of the petitioner Marcilin Anne Benvin.

Elizabeth O. White, Appellate Chief and Assistant United States Attorney, District of Nevada, Reno, Nevada, argued the cause on behalf of the real party in interest the United States. With her on the brief was Daniel G. Bogden, United States Attorney, District of Nevada, Reno, Nevada.

No appearance for Respondent.

**OPINION**

PER CURIAM:

We must decide whether a district court improperly interjected itself into plea negotiations and, if it did so, whether mandamus is the appropriate remedy in this case.

I

On August 10, 2011, Marcilin Benvin was charged in a fifty-count indictment alleging wire fraud, mail fraud, aggravated identity theft, money laundering, embezzlement, theft from an employee benefit plan, and false statements and concealment of facts in employee benefit plan records. These charges arose from the government's investigation into Benvin's actions as president of Cetus Mortgage, a financial services company which filed for bankruptcy protection while

Benvin was president.[1] Benvin entered a plea of not guilty to the indictment.

In due course, Benvin and the United States negotiated a plea agreement under Fed. R. Crim. P. 11(c)(1)(A)–(B). Under its terms, Benvin agreed to enter an unconditional guilty plea to one count of embezzlement and theft from an employee benefit plan ("Count 45"). Benvin further agreed that the court could consider all relevant conduct in determining the applicable guidelines sentencing range and stipulated to restitution of $260,000 for the offense of conviction. For its part, the government agreed to move to dismiss the other forty-nine counts at sentencing and agreed not to bring additional charges arising from the investigation. The parties also stipulated to an eighteen-level enhancement to Benvin's advisory sentencing guidelines offense level.

A

On August 13, 2013, the parties appeared before the district court for a change-of-plea hearing. During the hearing, the district court questioned Benvin to ensure that her unconditional guilty plea to Count 45 was knowing and voluntary. After reviewing the terms of the plea agreement with the prosecutor, the district court engaged in a lengthy colloquy with counsel regarding the restitution provision in the plea agreement, and whether it was "binding" upon the court. Both defense counsel and the prosecutor explained that the plea agreement itself did not bind the court regarding the

---

[1] The bankruptcy proceeding resulted in entry of a $3 million non-dischargeable judgment against Benvin and in favor of the estate, on the ground that Benvin was personally responsible for the conduct of Cetus Mortgage that resulted in damage to its creditors.

amount of restitution, but that the restitution statute limited the court's ability to order restitution to the offense of conviction. During the hearing, counsel also explained the parties' decision to reference the bankruptcy court's $3 million judgment against Benvin in connection with the criminal counts to be dismissed, and the difficulty of determining restitution for those counts.

The court stated that it would neither "accept the plea nor the plea agreement" until it had reviewed the presentence report. Defense counsel responded that, while the court could defer a decision on the plea agreement under Rule 11(c), it should accept the guilty plea once the requirements of Rule 11(b) were met. The court then explained that it would "terminate the hearing and . . . not accept the plea today if you take that position." The court rejected defense counsel's contention that Benvin was seeking to enter an unconditional guilty plea to Count 45, stating instead that Benvin's plea was conditional and that the plea agreement was binding on the court as to restitution. The court then terminated the hearing.

The next day, on August 14, 2013, the district court held a status conference, which it opened by stating:

> The record should reflect that counsel from both sides appeared in chambers yesterday, and we discussed the potential of changing the plea agreement slightly so that it could go forward, and that is my understanding of what you intend to do.
>
> The Court required two additional steps. Since I did not believe that the plea to one count was a straightup, unconditional plea, I required

counsel, number one, to change the plea agreement to make it clear that it was binding on the Court at least with respect to one aspect of the sentencing.

And, number two, with respect to all the other counts with different victims who thereby would be foreclosed from making statements at ultimate sentencing, I did require that before I took the plea, or concurrent with the plea hearing, that you noticed all potential victims of those other counts, actual counts, of the entry of a plea to one count only and the fact that therefore their restitution amounts could not, would not be included in any judgment of the district court. As we all know, that some of them are included, of course, in a nondischargeability judgment of the bankruptcy court.

And that the Court then would be willing to proceed with a guilty plea colloquy, and based, of course, upon any appearance or presentation of victims of other charged counts.

I'm not taking at that time their authorized witness statements because those statements are only authorized on behalf of people for counts to which she actually pleads guilty, but rather what I'm doing is I'm sampling the victims, if there are objections. If there are no objections, then I have no objection, of course. But if there are objections, I certainly

will hear that, by other victims on other counts.

This is not to impair the U.S. Attorney's prosecutorial discretion, but the Court just does not believe I can accept a binding plea agreement until I know that there's no bigger dispute in the community over whether she should be pleading to additional counts.

So those are the two steps I've asked counsel to comply with, in which case I'd be willing to go forward on a binding plea agreement.

The status conference concluded without further action.

## B

As the court required, the parties subsequently entered into a revised plea agreement under Rule 11(c)(1)(A), (B), and (C), which contained identical terms to the original agreement, except for making the $260,000 restitution amount binding on the court under Rule 11(c)(1)(C). The government also notified the alleged victims of all counts in the indictment to advise them of the upcoming change-of-plea hearing.

## C

The district court held the next change-of-plea hearing on November 4, 2013, which it began by stating: "This plea agreement has a couple of problems, in my opinion, that I need you to comment or help to resolve. The first and biggest one is the binding nature of it with respect to restitution." The

court then heard from counsel for the bankruptcy trustee regarding the scope of the $3 million bankruptcy judgment against Benvin. The trustee's counsel confirmed that any person with a claim against the Cetus Mortgage estate would be able to participate in any recovery against Benvin in the bankruptcy proceedings.

The court then suggested a revision to the terms of the parties' plea agreement:

> So that raises the biggest problem that I have. Why should I—why not stipulate to the restitution for the nondischargeable—the amount of the nondischargeable judgment?
>
> Here basically what we're doing is we're selecting one count of the indictment, to be sure, it's your right to do that, but also we're selecting one victim of that count as the recipient of restitution.
>
> The only amount that I can order restitution for is to that one pension fund, and so, in essence, I make the government the credit collector for that one victim. Any restitution, of course, would go to that one victim, nobody else. Under law, that's all it could go to, and I don't see that that's fair.
>
> * * *
>
> So that's the biggest problem. I see that as unfair.

And number two is, under the federal criminal statutes victims have a right to have input at the sentencing phase. They have a right to file a statement, make a statement, and basically what I think we're doing here is that we're deleting the rights of all other victims to make such a statement and limiting it to the pension, the one pension fund to which we're admitting the claim.

So I think we've got a major problem with that process, and therefore I'll let you persuade me that there's not a problem first, please, before we go forward with the plea agreement, and, of course, we'll hear anybody who wants to have input.

The prosecutor subsequently confirmed that the government had notified all alleged victims in the case, and that the parties had revised the plea agreement to make the restitution amount binding on the court. In addition, the prosecutor advised the court that the parties reached their agreement in part to avoid difficult issues of proof of loss, and noted that the agreement provided that the court could take all relevant conduct into account in determining the applicable guidelines sentencing range.

While acknowledging that it could not participate in the parties' plea negotiations, the court stated:

And how do you respond to the Court's suggestion—I mean, I can't get involved, the Circuit has just recently reminded us, in your guilty pleas, but as far as fairness in accepting

this guilty plea agreement, I do have the right to ask the question I think.

Why don't you just simply stipulate, and make it binding upon me, a restitution amount of $3 million so that basically they all share— all the victims share in the restitution payments received by the government?

* * *

But, but, if you were willing to stipulate to the $3 million amount, whatever the amount of the bankruptcy court judgment is, that means that whatever you collect by way of restitution payments we could spread equally amongst those victims, not just to the one pension fund.

Do you see what I'm saying?

* * *

Yeah, and I don't want to get into a negotiating situation, the three of us. I don't want to be in that position.

I'm just saying that the problem with the present agreement is the restitution payments that go to the government who always stands first in line, as we all know, including our taxes, will only be the collector for one victim unless we modify the language of this stipulation.

After hearing from defense counsel, the court reiterated its concerns with the parties' proposed plea agreement, and invited comment from any alleged victims:

> But I do want to take any input from victims who are alleged in any of the counts of the indictment, and primarily on the two questions, the two concerns I have about the plea agreement.
>
> One is the limitation of the restitution amount to just the one pension fund victim which means that the government, who will be involved in collection activities during supervised release time, for example, can collect on behalf of only that one victim, and the restitution payments would go only to that one victim.
>
> The other concern is the capping at 60 months by allowing her to plead to one count on which Congress has set an absolute maximum of five years, 60 months, limit in sentencing, even though the guidelines for some of the overall fraud counts would contemplate a 57- to 74-month guideline.

After one alleged victim not named in the indictment spoke, the court announced that it was rejecting the plea agreement, saying:

> I can't stop her from going forward with a plea of guilty to that one count, but I do caution you and her that I will not permit the

government to dismiss the other counts, even upon conviction, without a showing of one of two things, one, either consent by that victim listed in the indictment, or, if they're not willing to consent, a showing by the government satisfactory to me that they would have difficulty proving that count of the indictment.

And so I think that's the caution that I would give her. She can plead guilty to one count, of course, but I am not going to let the government dismiss the other counts without one of those two showings.

Defense counsel objected, arguing that "authority to dismiss counts is with the executive branch," and that the court's "conditioning of their authority is contrary to law." The court rejected this argument and asked again whether Benvin wanted to proceed with the guilty plea, given that the court was rejecting the plea agreement. When defense counsel suggested hearing from the government, the court reiterated:

I am not going to let them enter into a plea agreement with the defendant on these terms. That's all. That's all we need to hear. I'm not going to let them say we'll agree to part of the agreement. I'm not going to let them do that.

\* \* \*

Okay. I do need an answer to my question. Without a plea agreement, do you want to proceed on a guilty plea to one count?

After defense counsel expressed the need to discuss the matter with his client, the court terminated the hearing and ordered the case set for trial.

## D

In due course, Benvin brought this petition for a writ of mandamus. She seeks an order directing the district court not to condition its acceptance of the parties' plea agreement on the government's obtaining consent from alleged victims before dismissing the remaining counts. She also seeks an order that would prevent the district court from conditioning the United States Attorney's dismissal of the remaining counts in the indictment on a showing that the government would struggle to prove Benvin's guilt on those counts. Finally, Benvin seeks reassignment to a different district judge to preserve the appearance of justice. The United States agrees that mandamus relief is appropriate under the circumstances, and suggests that reassignment may be necessary in light of the district court's statements regarding plea negotiations.

We have jurisdiction to hear mandamus petitions pursuant to the All Writs Act, 28 U.S.C. § 1651.

## II

Under Fed R. Crim. P. 11, a district court may accept or reject the parties' plea agreement, but Rule 11(c)(1) instructs that "[t]he court must not participate in the[] [plea agreement] discussions." Fed. R. Crim. P. 11(c)(1). This rule is designed "to keep the judge from shaping the plea bargain or persuading the defendant to accept particular terms, and to preserve judicial impartiality." *United States v. Frank*,

36 F.3d 898, 902 (9th Cir. 1994). Moreover, we have recently "emphasize[d] that Rule 11(c)(1) is intended to eliminate all judicial pressure from plea discussions." *United States v. Kyle*, 734 F.3d 956, 963 (9th Cir. 2013). "[W]hen a court goes beyond providing reasons for rejecting the agreement presented and comments on the hypothetical agreements it would or would not accept, it crosses over the line established by Rule 11 and becomes involved in the negotiations." *Id.* (internal quotation marks omitted).

## A

Here, the district court repeatedly suggested that the parties stipulate to a restitution amount of $3 million to resolve the court's concerns that the alleged victims of the dismissed counts would not otherwise be entitled to receive restitution. As explained in *Kyle*, the court's suggestion that the parties add a particular term to the plea agreement constitutes impermissible involvement in plea discussions. *Id.* at 963–64.

Further, the district court inappropriately involved itself in negotiations when it imposed conditions on its approval of the government's proposal to dismiss forty-nine of the indictment's counts. Whether or not these conditions were independently improper, they constituted judicial setting of the terms in and processes for the plea agreement, and thus violated Rule 11(c)(1)'s prohibition on judicial involvement in plea discussions. *See id.* at 963.

## B

Having concluded that the district court erred by inserting itself into the parties' plea discussions, we must decide

whether mandamus is the appropriate remedy. In making such determination, we are guided by the five factors identified in *Bauman v. United States District Court*, 557 F.2d 650 (1977). We consider whether: (1) petitioner has any other adequate means of relief; (2) petitioner will be damaged or prejudiced in a way not correctable on appeal; (3) the district court clearly erred as a matter of law; (4) the district court's error is oft-repeated or manifests a persistent disregard of the federal rules; and (5) the district court's order raises new and important issues. *Id.* at 654–55. Not all of the factors need be met in order to grant mandamus relief. *Id.* at 655.

Here, the *Bauman* factors weigh in favor of granting mandamus relief. Given the district court's refusal to accept the parties' plea agreement, Benvin is left with choosing either to enter a guilty plea to Count 45 without a plea agreement or to proceed to trial on all fifty counts. We have repeatedly explained that these options do not provide adequate relief and can cause prejudice not correctable on appeal. *See Vasquez-Ramirez v. U.S. Dist. Court*, 443 F.3d 692, 701 (9th Cir. 2006) (quoting *Ellis v. U.S. Dist. Court*, 356 F.3d 1198, 1210–11 (9th Cir. 2004) (en banc)) (internal quotation marks omitted) (holding that "going to trial" or "pleading guilty to . . . and then appealing [a] conviction" are "inadequate" remedies for purposes of mandamus, as they would result in "substantial prejudice" to the defendant, the government, and the judicial system). Therefore, *Bauman*'s first two factors are met.

Moreover, as we have already discussed, *supra* Part II.A, the district court erred when it inserted itself into plea negotiations. That error satisfies *Bauman's* third factor. *Bauman*, 557 F.2d at 654–55. Finally, the fourth *Bauman*

factor is satisfied here. "Although the district judge's error is not oft repeated, it is contrary to the Federal Rules of Criminal Procedure." *Vasquez-Ramirez*, 443 F.3d at 700–01. Therefore, as in *Vasquez-Ramirez*, we conclude that "a writ of mandamus is the appropriate remedy." *Id.* at 701.

C

Benvin also seeks reassignment to a different district judge. "We may remand to a different district judge if a party can show personal biases or unusual circumstances, based on an assessment of three factors: (1) whether on remand the district judge can be expected to follow this court's dictates; (2) whether reassignment is advisable to maintain the appearance of justice; and (3) whether reassignment risks undue waste and duplication." *Kyle*, 734 F.3d at 966–67 (internal quotation marks omitted); s*ee also United States v. Sears, Roebuck & Co., Inc.*, 785 F.2d 777, 779–80 (9th Cir. 1986) (discussing circuit court's authority to reassign on remand). Either of the first two *Kyle* factors will support remand to a different district court judge. *Kyle*, 734 F.3d at 967; *see Sears*, 785 F.2d at 780.

Here, the appearance of justice will best be served by reassignment to a different judge. The current district judge has already expressed explicit views on the appropriate terms of the parties' plea agreement, suggested the terms he would and would not accept, and explained that he would not grant any motion dismissing forty-nine counts of the indictment unless the government complies with such terms. In such a situation, "[w]hether or not [the district judge] would reasonably be expected to put out of his mind the . . . conclusions previously drawn, and without ourselves reaching any determination as to his ability to proceed

impartially, to preserve the appearance of justice, . . . we conclude reassignment is appropriate." *Ellis*, 356 F.3d at 1211.

### III

The petition for a writ of mandamus is **GRANTED**. Respondent shall order this case be reassigned to another district judge in accordance with local court rules for further proceedings consistent with this opinion.**[2]**

---

**[2]** Petitioner's unopposed motion to take judicial notice of the district court's order setting the jury trial date for August 10, 2015 is **GRANTED**.