**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

LLOYD MYERS,
*Defendant-Appellant*.

No. 13-10580

D.C. No.
5:09-cr-01195-EJD-2

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Northern District of California
Edward J. Davila, District Judge, Presiding

Argued and Submitted
March 11, 2015—San Francisco, California

Filed September 14, 2015
Amended October 28, 2015

Before: M. Margaret McKeown, Mary H. Murguia,
and Michelle T. Friedland, Circuit Judges.

Order;
Opinion by Judge Murguia

## SUMMARY[*]

### Criminal Law

The panel affirmed a criminal judgment in a case in which the defendant and the government reached a plea deal during a settlement conference conducted by a magistrate judge.

The panel agreed with the defendant that *United States v. Davila*, 133 S. Ct. 2139 (2013), makes clear that Fed. R. Crim. P. 11(c)(1) imposes a categorical bar on judicial participation in plea negotiations, even when the judicial participation is both requested by the defendant and sanctioned by the district court's local rules.

The panel held that Rule 11(c)(1) is waivable by the defendant, but could not say on this record that the defendant knowingly waived Rule 11(c)(1). Because the defendant failed to object at the time to judicial participation, the panel reviewed the defendant's unpreserved claim that the settlement procedure violated Fed. R. Crim. P. 11 for plain error. The panel held that the defendant failed to establish the alleged error affected his substantial rights because the record is bereft of evidence indicating that he suffered any prejudice due to the magistrate judge's participation in the settlement conference. The panel observed that the settlement conference helped the defendant reach a plea deal with the government—something the defendant vigorously pursued during the nearly three years of pretrial proceedings—which

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

resulted in the defendant receiving a below-Guidelines sentence.

## COUNSEL

Michael K. Hinckley (argued), Law Offices of Michael Hinckley, Berkeley, California, for Defendant-Appellant.

Owen P. Martikan, Assistant United States Attorney (argued), Melinda Haag, United States Attorney, United States Attorney's Office, San Francisco, California, for Plaintiff-Appellee.

## ORDER

The Opinion filed September 14, 2015 is amended as follows:

1. At slip op. page 20, lines 11–14, change "Even though the magistrate judge's participation in the settlement conference amounts to Rule 11(c)(1) error, the "error" did not cause Myers to plead guilty; the settlement conference merely facilitated that result." to "Even though the magistrate judge's participation in the settlement conference amounts to Rule 11(c)(1) error, there is no indication in the record that the magistrate judge's involvement caused Myers to plead guilty—to the contrary, that is the result Myers had long sought to achieve."

2. At slip op. page 20, lines 15–17, change "It resulted in Myers reaching a favorable plea agreement with the government, avoiding trial, and receiving a below-Guidelines

sentence." to "Moreover, Myers reached a favorable plea agreement with the government, avoided trial, and received a below-Guidelines sentence."

With these amendments, the panel has voted to deny the petition for panel rehearing and the petition for rehearing en banc.

The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for panel rehearing and the petition for rehearing en banc are **DENIED** (Doc. 52).

No further petitions for rehearing or rehearing en banc will be entertained in this case.

---

## OPINION

MURGUIA, Circuit Judge:

Lloyd Myers was indicted on ten fraud-related charges stemming from his involvement in a Ponzi scheme he operated with his brother-in-law. After nearly three years of pretrial proceedings, Myers requested a judge-led criminal settlement conference in accordance with the Northern District of California's Criminal Local Rule 11-1. The prosecutor, initially opposed to the procedure due to the rapidly approaching trial date, ultimately acquiesced to Myers's request. The district court referred the matter to a magistrate judge to conduct a settlement conference. During

the proceeding, Myers and the government reached a plea deal that was subsequently memorialized in a written plea agreement between the parties. Myers later pled guilty to one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and was sentenced to a below-Guidelines sentence of eighteen months' imprisonment.

Myers does not dispute that he voluntarily participated in the settlement conference. Rather, he argues the procedure violated Federal Rule of Criminal Procedure 11, which prohibits "[t]he court" from "participat[ing] in [plea] discussions." Fed. R. Crim. P. 11(c)(1). Specifically, Myers argues that the Supreme Court's decision in *United States v. Davila*, ⸺ U.S. ⸺, 133 S. Ct. 2139 (2013), sets forth a categorical rule prohibiting any judicial involvement in plea negotiation, even, as is at issue here, when the judicial participation is both requested by the defendant and sanctioned by the district court's local rules.

We agree that *Davila* makes clear that Rule 11(c)(1) imposes a categorical bar on judicial participation in plea negotiations. Because Myers failed to object at the time to judicial participation, however, we review his unpreserved Rule 11 claim for plain error, and we affirm. Myers has failed to establish the alleged error affected his substantial rights because the record is bereft of evidence indicating that he suffered any prejudice due to the magistrate judge's participation in the settlement conference. Rather, the settlement conference helped Myers reach a plea deal with the government—something Myers vigorously pursued during the nearly three years of pretrial proceedings—which resulted in Myers receiving a below-Guidelines sentence.

**I**

In 2003, Myers and his brother-in-law, Rodney Hatfield, created Landmark Trading Company, LLC, to solicit investments and conduct financial transactions in the foreign currency exchange markets ("Forex" transactions). Myers and Hatfield had very little, if any, training or experience with Forex trading. Between 2003 and 2006, Hatfield recruited approximately forty investors, many of whom were fellow congregation members from Myers's and Hatfield's place of worship. Once funded, Hatfield transferred the money to a Forex trading account, which Myers controlled and operated. Myers and Hatfield received over $3,000,000 from investors, but because Myers's Forex trades were wildly unsuccessful, Landmark never turned a profit. However, this was not the information Myers and Hatfield represented to investors. Rather, investors were told the company was flush with cash and its investments consistently achieved monthly profits of up to three percent. To disguise the company's losses, Myers and Hatfield used new investors' funds to pay off other investors. By early 2007, the scheme had reached a breaking point: Myers and Hatfield reported to investors the value of Landmark's investment account was approximately $2,154,415, when the account actually contained a meager $4,615.

In December 2009, Myers and Hatfield were indicted in the Northern District of California for one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and nine counts of wire fraud, in violation of 18 U.S.C. § 1343. Following numerous delays, trial was set for March 2013. Leading up to the trial date, Myers and Hatfield actively sought to reach a plea deal with the government. For example, in August 2012, the parties

stipulated to a hearing continuance "to allow time for defendants' counsel to continue to work toward a resolution of the case with the government." The district court granted the motion and set a status conference hearing for November 5, 2012.

During the November 5 status conference,[1] after a brief discussion about the progress of pretrial discovery, the district court asked whether the parties wished to advance the trial date. Myers's counsel responded:

> Well, you know, I think the Court's intentions are to keep the ball rolling, and our idea is to have our feet to the fire . . . rather than having them in the fire. I think what we have been discussing, Your Honor, is possibly setting a [Criminal Local Rule 11-1] settlement conference prior to the Thanksgiving holiday.

Under the Northern District of California's Criminal Local Rule 11-1, titled "Voluntary Settlement Conference," the government and a criminal defendant "acting jointly" may request that the district court refer the case to another judge or magistrate judge to conduct a settlement conference. N.D. Cal. Crim. R. 11-1(a). The "role of the settlement Judge is to assist the parties in exploring a voluntary settlement in a criminal case."[2] N.D. Cal. Crim. R. 11-1(c). The rule

---

[1] Myers, who was living out of state at the time, waived appearing in person at the November 5 hearing.

[2] The district's Alternative Dispute Resolution Local Rule 7-1 describes the role of the judge presiding over the settlement conference. The rule states:

expressly provides: "[a]ny party may unilaterally withdraw its request for a settlement conference at any time." N.D. Cal. Crim. R. 11-1(d).

The government initially resisted Myers's request for a settlement conference. The prosecutor acknowledged that Myers had made "good efforts in trying to resolve the matter up until today," but stated "the government's ability to resolve [the case without trial] would be rapidly diminishing" given the approaching trial date. However, the government ultimately agreed to Myers's request and the district court referred the matter to a magistrate judge to oversee the settlement conference.

On December 14, 2012, the parties took part in a five-hour settlement conference with the magistrate judge, where Myers agreed, among other things, to plead guilty to one count of conspiracy to commit wire fraud. A few weeks later, Myers and the government entered into a written plea agreement in which Myers agreed, among other things, to "give up [his] right to appeal [his] conviction, the judgment, and orders of the Court."

---

> In a settlement conference, a judicial officer, usually a Magistrate Judge, facilitates the parties' efforts to negotiate a settlement. Some settlement Judges use mediation techniques in the settlement conference to improve communication among the parties, probe barriers to settlement, and assist in formulating resolutions. A settlement Judge might articulate views about the merits of the case or the relative strengths and weaknesses of the parties' legal positions.

N.D. Cal. ADR R. 7-1.

The district court held a change of plea hearing in February 2013. There, Myers acknowledged that he had waived his right to appeal his conviction and sentence, and he affirmed that his guilty plea was knowing and voluntary. Myers expressed satisfaction with the quality of his representation and confirmed that he was pleading guilty because he was, in fact, guilty. The district court accepted Myers's guilty plea.

The district court sentenced Myers on October 15, 2013. The district court imposed a sentence of 18 months' imprisonment, below the 24-month sentence recommended by Probation.

## II

Federal Rule of Criminal Procedure 11 prohibits "[t]he court" from participating in plea discussions. Fed. R. Crim. P. 11(c)(1). The Federal Rules broadly define "[c]ourt" to "mean[] a federal judge performing functions authorized by law," Fed. R. Crim. P. 1(b)(2), a definition which expressly includes "a magistrate judge" executing his or her legal duty, Fed. R. Crim. P. 1(b)(3)(B). While Rule 11(c)(1) appears to prohibit any form of judicial participation in the plea bargaining process, our "court previously approved the participation by a settlement judge in plea negotiations." *United States v. Scolari*, 72 F.3d 751, 753 (9th Cir. 1995); *see United States v. Torres*, 999 F.2d 376, 377–78 (9th Cir. 1993) (per curiam) (holding that no Rule 11 violation occurred when "[t]he parties . . . hammered out their agreement with the assistance of [a settlement judge]" in accordance with the then-existing criminal case settlement procedures for the Southern District of California). *Torres* and *Scolari* did not address, much less resolve, the conflict between the plain

language of Rule 11(c)(1)—which categorically prohibits "[t]he court" from participating in plea negotiations—and the local rule's allowance of judge-led criminal settlement conferences. Rather, these decisions appear to distinguish criminal settlement conferences from the scope of Rule 11(c)(1) on the basis that "the *sentencing* judge . . . did not participate in any plea bargaining." *Scolari*, 72 F.3d at 753 (emphasis added); *see Torres*, 999 F.2d at 378. The Supreme Court's recent decision in *Davila*, 133 S. Ct. at 2139, is irreconcilable with this reasoning.

In *Davila*, the defendant, dissatisfied with his court-appointed attorney, sent a letter to the district court requesting that a new attorney be appointed to represent him. According to Davila, his lawyer advised him to plead guilty and therefore "offered no defensive strategy." 133 S. Ct. at 2143. The request for new counsel was referred to a magistrate judge who, during an *in camera* hearing, made a number of inappropriate comments urging Davila to plead guilty and cooperate with the government.[3] *Id.* at 2143–44.

---

[3] For example, the magistrate judge instructed Davila that "it might be a good idea" to accept responsibility and plead guilty because "the Government . . . [has] all of the marbles in this situation and they can file that . . . motion for [a] downward departure . . . if they want to." *Davila*, 133 S. Ct. at 2144. Davila's Sentencing Guidelines range, the judge informed him, would "probably [be] pretty bad because [Davila's] criminal history score would be so high." *Id.* The magistrate judge further suggested that Davila could reduce his sentencing exposure by "cooperat[ing] with the Government in this or in other cases," stating:

> You've got to go [to the cross] and you've got to tell it all, Brother, and convince that probation officer that you are being as open and honest with him as you can possibly be because then he will go to the [D]istrict [J]udge and he will say, you know, that Davila guy,

Davila pled guilty about three months later. He then appealed, arguing that the magistrate judge's comments violated Rule 11. *Id.* at 2144–45. The Eleventh Circuit agreed and vacated Davila's guilty plea consistent with the circuit's then-existing rule requiring automatic vacatur for Rule 11(c)(1) violations. *Id.* at 2145.

The government conceded that the magistrate judge's comments violated Rule 11(c)(1). The Supreme Court acknowledged the concession, stating: "there is no room for doubt on that score. The Magistrate Judge's repeated exhortations to Davila to 'tell it all' in order to obtain a more favorable sentence . . . were indeed beyond the pale." *Id.* at 2148. Having resolved the question of error, the Court next addressed the issue presented in *Davila*: whether "the violation of Rule 11(c)(1) by the Magistrate Judge warranted automatic vacatur of Davila's guilty plea," as the Eleventh Circuit had ruled. *Id.* at 2143, 2148.

The Court determined that automatic vacatur was not an appropriate remedy for a violation of Rule 11(c)(1). *Id.* at 2148. Rather, like all trial errors, Rule 11(c)(1) violations should be reviewed under either Rule 52(a)'s harmless-error standard or Rule 52(b)'s plain-error standard, "depending on when the error was raised." *Id.* at 2147, 2150. The Court explained the harmless-error standard applies to preserved errors, while "the 'plain-error rule[]' [is] applicable when a defendant fails to object to the error in the trial court." *Id.* at

---

he's got a long criminal history but when we were in there talking about this case he gave it all up so give him the two-level, give him the three-level reduction.

*Id.* (alterations in original).

2147. The Supreme Court remanded the case so that the court of appeals could "reach[] [the] case-specific arguments raised by the parties" in the first instance, including Davila's argument that the "extraordinary circumstances" of his case warranted a departure from the general rule that the plain-error standard governs the review of unpreserved errors. *Id.* at 2150.

Myers argues that *Davila* sets forth a bright-line rule that magistrate judges cannot participate in plea negotiations under Rule 11(c)(1), even where, as here, the defendant facilitated judicial involvement by specifically requesting a judge-led settlement conference. The government conceded error during oral argument. Although we are not bound by the government's legal concession, *see United States v. Daas*, 198 F.3d 1167, 1178 n.14 (9th Cir. 1999), we agree that *Davila* undercuts the analysis upon which our court relied in *Torres* and *Scolari*. The factual circumstances in *Davila* are quite distinct from those present in Myers's case, but *Davila*'s interpretation of Rule 11 is clear: "Rule 11(c)(1)'s *prohibition* of judicial involvement in plea discussions" extends to magistrate judges who are neither the sentencing judge nor the judge presiding over the defendant's criminal case. 133 S. Ct. at 2146 (emphasis added). Given this directive, we cannot ignore that the plain language of Rule 11(c)(1) compels the application of the rule to the circumstances here. *See United States v. Petri*, 731 F.3d 833, 839 (9th Cir. 2013) ("Because the Federal Rules of Criminal Procedure, once effective, have the force and effect of law, we apply traditional tools of statutory construction to interpret them." (internal quotation marks and citation omitted)).

We observe that each decision of this court that has expressly addressed the scope of Rule 11(c)(1) has similarly concluded the Rule categorically bars judges from participating in plea negotiations. *See, e.g.*, *United States v. Kyle*, 734 F.3d 956, 963 (9th Cir. 2013) ("We take this opportunity to emphasize that Rule 11(c)(1) is intended to eliminate all judicial pressure from plea discussions."); *United States v. Gonzalez-Melchor*, 648 F.3d 959, 964 (9th Cir. 2011) ("We have explained previously that judicial participation in plea negotiations is prohibited[.]"); *United States v. Bruce*, 976 F.2d 552, 556 (9th Cir. 1992) (noting Rule 11(c)(1) creates a "'bright-line rule' . . . bar[ring] a judge from participating in plea bargaining"); *see also United States v. Baker*, 489 F.3d 366, 371 (D.C. Cir. 2007) ("[C]ourts have interpreted Rule 11 categorically to mean the judge's role is limited to acceptance or rejection of the plea agreement after a thorough review of the relevant factors; the judge should not participate in the plea bargaining process." (internal quotation marks omitted)); *see also In re Benvin*, 791 F.3d 1096, 1103 (9th Cir. 2015). Consistent with these decisions, we conclude that Rule 11(c)(1) extends to the magistrate judge's participation in the settlement conference at issue here.

We note that this means Northern District of California Local Criminal Rule 11-1(a) was and is in conflict with Rule 11(c)(1). The local rule allowed judicial participation only after Myers himself requested it, *see* N.D. Cal. Crim. R. 11-1(a), and also permitted Myers to withdraw from the settlement conference "at any time," *see* N.D. Cal. Crim. R. 11-1(d). While these facts bear on whether Myers voluntarily waived Rule 11(c)(1)—which we address later in this opinion—these procedural protections do not ameliorate the conflict between the local rule and Rule 11(c)(1)'s categorical

bar on judges participating in plea negotiations. *See* Fed. R. Crim. P. 57 ("A local rule must be consistent with . . . federal statutes and rules . . . ."); *United States v. Lopez-Cavasos*, 915 F.2d 474, 477 (9th Cir. 1990).

## III

The parties dispute whether Myers's appeal waiver precludes our consideration of the merits of his Rule 11 claim. Generally, "[a] defendant's waiver of his appellate rights is enforceable if (1) the language of the waiver encompasses his right to appeal on the grounds raised, and (2) the waiver is knowingly and voluntarily made." *United States v. Jeronimo*, 398 F.3d 1149, 1153 (9th Cir. 2005), *overruled on other grounds by United States v. Castillo*, 496 F.3d 947, 957 (9th Cir. 2007) (en banc). Myers acknowledges that he waived his right to appeal his conviction and sentence in his plea agreement, but he contends the waiver does not preclude our consideration of his Rule 11 claim. *See United States v. Brizan*, 709 F.3d 864, 866 (9th Cir. 2013) ("We decline to enforce an appeal waiver . . . if the district court failed to comply with Federal Rule of Criminal Procedure 11[.]"). The government concedes that an appeal waiver is generally not enforceable when the district court violates Rule 11. However, the government argues that Myers's appeal waiver should be enforced because Myers, by requesting the settlement conference, invited the error and therefore waived his right to raise the issue on appeal under the invited error doctrine.

"The doctrine of invited error prevents a defendant from complaining of an error that was his own fault." *United States v. Reyes-Alvarado*, 963 F.2d 1184, 1187 (9th Cir. 1992). Under the doctrine, an error is "waived and therefore

unreviewable" when "the defendant has both [1] invited the error, and [2] relinquished a known right." *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc) (citing *United States v. Olano*, 507 U.S. 725, 733 (1993)).

Here, with respect to *Perez*'s first inquiry, there is little question Myers invited Rule 11 error. During the status hearing on November 5, 2012, defense counsel requested the settlement conference as a last-ditch effort to resolve the case before trial. In counsel's words, Myers wanted "to have [his] feet to the fire" in a settlement conference "rather than having them in the fire" at trial. While the government was initially inclined to proceed to trial, it ultimately agreed to participate in the settlement conference. The government notified Myers that its "ability to resolve [the case without trial] would be rapidly diminishing," and with this in mind, Myers participated in the judge-led settlement conference the following month. Myers could have withdrawn from the settlement conference at any time, yet he participated in the process knowing full well the government would take the case to trial if he preferred that route. Under these circumstances, we have no trouble concluding that Myers invited the Rule 11 error.

Because of the limited record before us, the second showing required under *Perez*—"whether [Myers] intentionally relinquished or abandoned a known right"—is less clear. *Perez*, 116 F.3d at 845 (citing *Olano*, 507 U.S. at 733). As our en banc decision in *Perez* clarified, the Supreme Court's decision in "*Olano* limits our application of the invited error doctrine to those rights deemed waived, as opposed to merely forfeited, that is, 'known right[s]' that have been 'intentional[ly] relinquish[ed] or abandon[ed].'" 116 F.3d at 842 (alterations in original) (quoting *Olano*, 507

U.S. at 733). "Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." *Olano*, 507 U.S. at 733. Thus, to find that Myers waived Rule 11(c)(1), we must find both that (1) a criminal defendant can, in fact, waive Rule 11(c)(1), and (2) Myers knowingly did so here.

As to the first inquiry, we hold that Rule 11(c)(1) is waivable. In *United States v. Mezzanatto*, the Supreme Court explained the provisions of "the Federal Rules of Criminal Procedure . . . are presumptively waivable." 513 U.S. 196, 201 (1995). Rule 11 is no exception. *See, e.g.*, *United States v. Orm Hieng*, 679 F.3d 1131, 1138 (9th Cir. 2012) (defendant can waive right not to have the statements he made during proffer discussions used against him (Rule 11(f)); *United States v. Reyes*, 313 F.3d 1152, 1158 (9th Cir. 2002) (defendant can waive right to withdraw a plea under Rule 11(c)(5) if the waiver is knowing and voluntary). We see no reason to hold Rule 11(c)(1) to a higher standard, particularly in light of *Davila*'s reasoning "that violation of Rule 11(c)(1) is [not] necessarily an error graver than" any other Rule 11 violation. *Davila*, 133 S. Ct. at 2148–49. We therefore hold that Rule 11(c)(1) can be waived by the defendant.

On this record, however, we cannot say that Myers knowingly waived Rule 11(c)(1). *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993) (noting that an enforceable waiver requires "[a] knowing and voluntary waiver of a statutory right"). We note that the best practice for a waiver of Rule 11(c)(1) is for the government to obtain

either a written waiver from the defendant, *see Orm Hieng*, 679 F.3d at 1138, or for the district court to confirm the defendant is both aware of and voluntarily waives Rule 11(c)(1)'s prohibition of judicial involvement in plea negotiations, *see, e.g.*, *Reyes*, 313 F.3d at 1158–59. Neither occurred here.

The government nonetheless urges us to conclude that Myers waived Rule 11(c)(1) because, the government contends, "[b]y proposing a magistrate judge's participation in settlement negotiations, Myers used the plea bargaining process to obtain a favorable [. . .] agreement with the government." The government also points out that Myers does not claim that his request for a settlement conference was unintentional, or that it resulted from any kind of judicial pressure. Rather, the government concludes, Myers waived Rule 11(c)(1)'s protection "for his own tactical reasons," reasoning that Myers should not be allowed to "undo that choice because he has doubts about it now."

While the government's arguments explain why Myers requested the settlement conference, and the explanations support a finding that Myers suffered no prejudice from the alleged error, the government's contentions do not establish that Myers "intentionally relinquished . . . a *known* right." *Perez*, 116 F.3d at 845 (emphasis added). Moreover, Myers argues the Rule 11 error only came to light after *Davila* was decided, which was after Myers had participated in the settlement conference and pled guilty. Particularly given the confusion that could have been created by the local rule, and the then-lack of guidance from *Davila*, we cannot conclude on this record that Myers knowingly waived Rule 11.

**IV**

Generally, "where, as here, the defendant failed to raise the Rule 11 violation before the trial court," we review the alleged error under the plain-error standard. *Kyle*, 734 F.3d at 962; *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004) ("Because the claim of Rule 11 error was not preserved by timely objection, the plain-error standard of Rule 52(b) applies."). While we have recognized certain exceptions to this general rule, *see, e.g.*, *Kyle*, 734 F.3d at 962 (when a timely objection "was either unlikely or futile"), none apply here.

Myers disagrees. He argues that because he only learned of the Rule 11 violation after the Supreme Court decided *Davila* on June 13, 2013—nearly six months after Myers's settlement conference took place—he was deprived of a "meaningful opportunity to make a contemporaneous objection" to the procedure. Myers also argues that an objection to the settlement conference procedure would have been futile since at the time he requested the procedure, it was fully compliant with this Circuit's law. Myers reasons that the district court "would not have sustained any objection" to the procedure because the court "clearly did not believe . . . the settlement conference violated Rule 11(c)(1)."

These arguments are unavailing for a number of reasons. First, nothing in the record indicates that Myers's participation in the settlement conference was anything but voluntary—a point Myers's appellate counsel conceded during oral argument. Myers requested the procedure and could have thereafter "unilaterally withdraw[n his] request for a settlement conference at any time," N.D. Cal. Crim. R. 11-1(d), but he simply failed to do so. This failure supports

reviewing Myers's alleged error under our plain-error standard. *See United States v. Vonn*, 535 U.S. 55, 59 (2002) (holding that "a silent defendant has the burden to satisfy the plain-error rule").

Moreover, the record establishes that Myers's participation in the settlement conference was a tactical decision. Throughout the lengthy pretrial proceedings in this case, Myers actively sought a plea agreement with the government. The circumstances surrounding Myers's request for a settlement conference suggest that he requested—and participated in—a settlement conference to further this goal. Myers's counsel requested the settlement conference four months before the trial date only after the district court inquired whether the parties wished to move up the trial date. Notably, during the same hearing, the government informed the district court it would soon be preparing for trial and as a result "the government's ability to resolve [the case without trial] would be rapidly diminishing." Thus, Myers participated in the settlement conference knowing that if the parties failed to reach a plea deal, the case would likely proceed to a jury trial on the ten counts charged in the Indictment.

We reject Myers's contention that the timing of the Supreme Court's decision in *Davila* meant that he never had an opportunity to object to the settlement conference procedure. Myers correctly points out that *Davila* was decided six months after he requested the settlement conference. He fails to note, however, that the Court filed its *Davila* decision four months *before* his sentencing. During that time, Myers could have moved to withdraw his guilty plea on the basis of the error he now alleges. He chose not to,

presumably in hope that the district court would impose a more lenient sentence.

Under these circumstances, we see no reasons to deviate from our general rule that the plain-error standard governs the review of unpreserved errors. *See Vonn*, 535 U.S. at 73 (noting that failure to review unpreserved errors under the plain-error standard creates a perverse incentive for defendants to "simply relax and wait to see if the sentence later struck him [or her] as satisfactory"); *see also United States v. Sanya*, 774 F.3d 812, 815 (4th Cir. 2014) ("Because [defendant] neither objected to the judge's involvement in plea discussions, nor made an attempt to withdraw his guilty plea, we consider his appellate argument under the rigorous plain error standard.").

**V**

"Plain error is '(1) error, (2) that is plain, and (3) that affect[s] substantial rights. . . . If all three conditions are met, [we] may then exercise [our] discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Kyle*, 734 F.3d at 963 (alterations in original) (quoting *United States v. Cotton*, 535 U.S. 625, 631 (2002) (internal citations and quotations marks omitted)). Indeed, correcting an error under "Rule 52(b) is permissive, not mandatory" and, as a result, even "[i]f the forfeited error is 'plain' and 'affect[s] substantial rights,' [we] ha[ve] authority to order correction, but [are] not required to do so." *Olano*, 507 U.S. at 735. We decline the invitation here because Myers fails to establish either that the alleged error affected his substantial rights or that it seriously affected the fairness, integrity or reputation of the judicial proceedings.

"[A] defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea." *Dominguez Benitez*, 542 U.S. at 83. To meet this standard, Myers bears the burden to establish that, based on the totality of the circumstances, "the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding." *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). Myers cannot make this showing. As we discuss above, the Northern District's settlement conference procedure is not categorically impermissible: while the procedure violates the plain letter of Rule 11(c)(1), the rule is waivable at the defendant's election. The record is devoid of evidence that Myers's participation in the settlement was anything but voluntary, a point Myers's appellate counsel conceded during oral argument. Rather, the record indicates that Myers wanted to avoid going to trial and participated in the settlement conference to achieve this objective. Throughout the pretrial proceedings, Myers actively sought to reach a plea deal with the government. Even though the magistrate judge's participation in the settlement conference amounts to Rule 11(c)(1) error, there is no indication in the record that the magistrate judge's involvement caused Myers to plead guilty—to the contrary, that is the result Myers had long sought to achieve. Moreover, Myers reached a favorable plea agreement with the government, avoided trial, and received a below-Guidelines sentence. Under these circumstances, Myers has not established a reasonable probability that he would not have pled guilty in the absence of the alleged error, nor that he would not have participated in the settlement conference had he been required to expressly waive Rule 11(c)(1). *See Dominguez Benitez*, 542 U.S. at 83.

Moreover, even if Myers could establish that the alleged error affected his substantial rights, we would not exercise our discretion to correct the error because Myers's voluntary participation in the judge-led settlement conference that he requested in no way "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *See Johnson v. United States*, 520 U.S. 461, 469–70 (1997) ("[E]ven assuming that the [alleged error] 'affec[ted] substantial rights,' it does not meet the final requirement of" the plain-error standard of review).

**AFFIRMED.**