UNITED STATES of America,
Plaintiff–Appellee,

v.

SIU KUEN MA, Defendant–Appellant.

No. 01–10025.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 11, 2002.

Filed May 9, 2002.

Jason F. Carr, Assistant Federal Public Defender, Las Vegas, NV, for the defendant-appellant.

Margaret M. Stanish, Assistant United States Attorney, Las Vegas, NV, for the plaintiff-appellee.

Before D.W. NELSON, NOONAN and HAWKINS, Circuit Judges.

## OPINION

NOONAN, Circuit Judge.

Siu Kuen Ma appeals the sentence imposed by the district court following her plea of guilty to three counts of money laundering in violation of 18 U.S.C. § 1957. The district court did not engage in the colloquy with her required by Fed. R.Crim.P. 11(c)(6). While the appeal was pending, the legal landscape on Rule 11 error was altered by *United States v. Vonn,* —— U.S. ——, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002). Under *Vonn,* Ma has failed to show that the error affected her substantial rights or that it "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Id.* at 1048 (internal quotation marks omitted and alteration in original). Accordingly, we dismiss her appeal.

## FACTS

In her plea agreement with the government, Ma acknowledged the truth of the following: At all relevant times she was employed by First Republic Bank (the Bank), a federally insured financial institution in San Francisco, California. Beginning in December 1997 and continuing until March, 2000, she fraudulently transferred funds from and to accounts to which her position at the Bank gave her access. More particularly in November and December 1999, she fraudulently debited various customers' accounts to obtain cashier's checks and bank checks payable to herself which she deposited into her account at Wells Fargo Bank in San Francisco. She then withdrew the funds from Wells Fargo to buy cashier's checks payable to herself. She subsequently used the checks at various casinos in Las Vegas, Nevada to obtain gaming chips. In particular, she purchased in this way $30,000 worth of markers at the Rio Suite Hotel and Casino and $240,000 at the Mandalay Bay Resort and Casino. The total value of the funds she laundered was more than $2 million and less than $3.5 million.

The Presentence Report provides further undisputed facts which flesh out the frigid recitation of the plea agreement. Ma was born on January 2, 1970 in Guandong, China. She came with her parents to the United States in 1987 at the age of seventeen. Her parents worked long hours six days a week to support the family and after five years made a down payment on a house. Ma, who also worked on her arrival here, was hired in 1996 by the Bank as a New Account Officer. In 1997, she was promoted to Senior Savings Officer. On July 1, 1998, she became an Assistant Branch Manager.

Ma's troubles began in 1995 when her parents sold their home, and her mother gave her $61,000 to deposit in a normal bank account. Instead, Ma invested the money in the stock market and suffered substantial loss. Ashamed, she did not want to tell her mother what had happened. She began to gamble to make up the loss. At first she only borrowed from friends, but as she lost more money the gambling became an addiction. To sustain it, she took the cashier's checks and the money from the accounts of the Bank.

## PROCEEDINGS

On March 2, 2000, Ma was arrested in Las Vegas. On March 22, 2000, she was charged by the filing of an information. On July 21, 2000, pursuant to Fed. R.Crim.P. 11(e)(1)(B), she agreed to plead

guilty to violation of 18 U.S.C. § 1957. The plea agreement set out the Guideline Calculations as follows: Basic Offense level, 17; increase of 2, because Ma knew the funds came from her embezzlements; increase of 6 since the total value of the funds was more than $2 million and less than $3.5 million; reduction of 3 for her acceptance of responsibility. The government reserved the right to argue for a 2–point increase because of her abuse of a position of responsibility. Assuming that this increase was imposed, the plea agreement set the offense level at 24, which, with a criminal history of I, pointed to a guideline range of 51 to 63 months. The government agreed to recommend the low end of the range.

According to the terms of the plea agreement, Ma agreed "to waive the right to appeal all matters pertaining to this case and any sentence, including any order of restitution, fine, term of imprisonment, or condition of supervised release or probation." She agreed "to pay restitution for the full loss caused by her activities, including relevant conduct not charged in the indictment." Ma acknowledged in writing that she had read and understood the plea agreement.

On July 21, 2000, Ma appeared before the district court and pleaded guilty as she had agreed to do. The hearing was conducted with an interpreter translating for Ma. The charges were read to Ma, and the court ascertained that she understood the essential elements of the offenses and that she read English. The court made sure that Ma knew she was waiving the right to an indictment by the grand jury; to jury trial; to have an attorney at trial; not to incriminate herself; to be confronted by her accusers; and to testify in her own defense.

The court then asked the prosecuting assistant United States attorney to give a brief summary of the plea agreement. The prosecutor set out all of the terms set out above, including the fact that Ma had agreed to waive her right to appeal. The court asked Ma's counsel if what had been presented agreed with his understanding and if he had discussed these matters with his client. He answered affirmatively. The court then asked Ma if she understood the agreement and was in agreement with it. She, too, replied affirmatively. The court then interrogated her as to whether she was acting voluntarily and without threat or promise; as to whether she understood that only the court would determine her sentence and that in doing so the judge would select a sentence from the guidelines but might depart below or above them and that the court in sentencing could take into account all relevant information. Satisfied by her answers that Ma understood all these things, the court accepted her plea of guilty. Sentencing was postponed. During Ma's sentencing proceeding, the judge stated, "The defendant has waived her right to appeal her conviction and sentence."

The Presentence Report stated that the Bank had suffered a total loss of $1,316,904 from Ma's activities and that various Las Vegas casinos had suffered a loss of $780,000 from stolen checks used by Ma and dishonored by the bank. Ma argued the report overstated the loss in three ways: (1) It estimated the loss to First Republic as $1,316,904, but it included in that number $52,583 found in Ma's possession when she was arrested. This amount was neither laundered nor lost to the Bank, whose total loss was therefore $1,264,321. The report estimated loss to the three casinos as $780,000, but that was the total amount of the cashier's checks used to obtain credit at the casinos; $280,000 of this credit Ma did not draw upon, so the total loss to the casinos was $500,000. Adding the loss of the bank and the casinos, Ma stated that the total loss to victims was $1,764,321.

In reply to Ma, the government estimated that "the actual amount of loss incurred by the victims ... totaled $1,966,904." Ma did not dispute this figure. The district court accepted the figure as including intended as well as actual loss.

The district court sentenced Ma to four years and three months in prison, three years of supervised release, and restitution in the amount of $1,996,904.

Ma appeals, challenging the adequacy of the Rule 11 colloquy and the amount of restitution.

### ANALYSIS

Fed.R.Crim.P. 11(c) states: "Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:

...

(6) the terms of any provision in a plea agreement waiving the right to appeal or to collaterally attack the sentence."

The district court was meticulous in observing the requirements for taking a plea in accordance with Rule 11, except as to the requirement now embodied in Rule 11(c)(6). This requirement was added by amendment in December 1999. The Advisory Committee "believed it ... important" to make the amendment in the light of "the increasing practice" of requiring the waiver of appeal. Fed.R.Crim.P. 11 advisory committee's note. Having the prosecutor summarize the terms of the plea agreement was proper prior to the 1999 amendment. *United States v. Michlin*, 34 F.3d 896, 898 (9th Cir.1994). The prosecutor's summary, however, did not fulfill the requirements of the new Rule 11(c)(6). It may be that when prosecutors, who are intimately familiar with the plea process, summarize pleas for the court,

shorthand language is used and fewer precautions are taken to ensure a defendant's understanding than would be taken by a judge directly addressing a defendant. The rule was not complied with.

Because Ma did not object to this error at the Rule 11 colloquy, however, this court must review the proceeding for plain error. *United States v. Vonn*, 535 U.S. ——, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002). A "plain error" must be clear and obvious, "highly prejudicial" and must affect "substantial rights." *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). This court will correct the error only if the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).

The error by the court during the Rule 11 colloquy did not constitute plain error. During the government's summary of the plea agreement's terms, the prosecutor set out the waiver provision. The district court then asked Ma if the summary comported with her understanding of the plea agreement and she responded affirmatively. The whole record is to be taken into account when considering the effect of any Rule 11 error on a defendant's substantial rights. *Vonn*, —— U.S. at ——, 122 S.Ct. at 1054–55. Even before the Rule 11 colloquy, Ma had acknowledged in writing that she read and understood the plea agreement. On these facts Ma has failed to show that the error seriously affected the fairness or integrity of her plea.[1]

AFFIRMED.

---

**1.** Because Ma waived her right to appeal and her guilty plea was proper, we do not reach    the restitution question.