**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | No. 20-10007 |
| v. | D.C. No. 1:19-cr-00062-LJO-SKO-1 |
| SHELDON KING, *Defendant-Appellant.* | OPINION |

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

Submitted November 20, 2020*
Pasadena, California

Filed January 14, 2021

Before: Consuelo M. Callahan and Patrick J. Bumatay,
Circuit Judges, and Gregory A. Presnell,** District Judge.

Opinion by Judge Bumatay

---

* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

** The Honorable Gregory A. Presnell, United States District Judge for the Middle District of Florida, sitting by designation.

## SUMMARY[***]

### Criminal Law

The panel affirmed the district court's denial of the defendant's motion to suppress firearms, and dismissed the remainder of his appeal as waived, in a case in which the defendant entered a conditional guilty plea to being a felon in possession.

Challenging the validity of a search warrant pursuant to which law enforcement searched his home, the defendant argued that the warrant was overbroad—that there was only probable cause for a particular revolver, and no other firearms. The panel held that the warrant did not violate the Fourth Amendment. The panel wrote that an officer's affidavit, which alerted a judge that the defendant took the revolver to hide it from law enforcement for a domestic-abuse suspect, raised the inference that the defendant possessed other firearms; and that the facts, taken together, provided the judge with a substantial basis to authorize the search for "any firearm." The panel wrote that even though the warrant complied with the Fourth Amendment, the good-faith exception also justifies denial of the suppression motion.

The panel held that the defendant's knowing and voluntary appellate waiver precludes his attack on his career-offender sentence enhancement.

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The defendant urged this court to allow him to withdraw his plea and enter a new agreement preserving his right to appeal his sentence because the district court violated Fed. R. Crim. P. 11(c)(1) by participating in his plea negotiations. Rejecting the government's contention that this claim is subsumed by the defendant's appellate waiver, the panel wrote that the failure to comply with Rule 11(c)(1) may be reason not to enforce an appellate waiver. Reviewing for plain error, the panel held that neither of two instances identified by the defendant constitute improper judicial participation in plea negotiations, and the defendant cannot in any event show that the judge's interactions affected his substantial rights.

**COUNSEL**

Carlton F. Gunn, Pasadena, California, for Defendant-Appellant.

McGregor W. Scott, United States Attorney; Camil A. Skipper, Appellate Chief; Katherine E. Schuh, Assistant United States Attorney; United States Attorney's Office, Fresno, California; for Plaintiff-Appellee.

**OPINION**

BUMATAY, Circuit Judge:

While searching Sheldon King's home pursuant to a warrant, Fresno police discovered a medley of firearms. But any firearm is too many for King, who had two felony convictions. He was charged with being a felon in possession, and after the district court refused to suppress the

firearms, he entered a plea agreement.  King was sentenced to 90 months.  He now appeals the district court's denial of his motion to suppress as well as his sentence.

For the reasons explained below, we affirm the district court's denial of the motion to suppress and dismiss the remainder of the appeal as waived.

## I.

The police began looking into King after the investigation of a serious domestic-violence incident involving individuals uncharged in this case.  While the details of the abuse are troubling, we need only provide the key points:

- It began when a male suspect pointed an unloaded gun at a woman's head and pulled the trigger.

- The suspect then started to open a box of ammunition while the victim fled outside.

- The suspect followed the victim and struck her across the face.

- The victim then made contact with the police and described the suspect's firearm as a "large silver & gold revolver" with an unknown caliber.

- In a jailhouse conversation between the suspect and victim, the suspect asked the woman to give "the thing" to "Dubs."

- Police suspected that "the thing" referred to the gun and asked the victim about it.

- The victim admitted she gave the firearm to "Dubs" and described his appearance and phone number, the location of his house, his live-in girlfriend, and his vehicles.

Using the victim's information, officers learned that "Dubs" was King. They also discovered that King was prohibited from possessing firearms based on two prior felonies: one for the willful infliction of corporal injury on a spouse or cohabitant resulting in a traumatic condition, and one for transporting cocaine for sale. Finally, officers observed King's car parked at his residence—the place where the victim said she delivered the firearm.

On the basis of this information, a police officer signed an affidavit stating that there was probable cause to believe King was in violation of California Penal Code § 29800(a) (felon in possession) and requested permission to search his home for the "outstanding firearm and any evidence that would further the [officer's] investigation." A judge then authorized the warrant, allowing the search of King's home for "[a]ny firearm" and various other firearm-related items.

The search of King's home turned up four firearms: (1) a Norinco Model 1911 .45 caliber pistol; (2) an A. A. Arms Model AP9 9mm caliber pistol; (3) a Hermann Weihrauch Model HW357 .357 caliber revolver, which turned out to be the "silver & gold revolver" described by the victim; and (4) an AK-style .545 by 39mm caliber machine gun rifle. Law enforcement determined that the AK-style, fully automatic machine gun had been stolen from an army base.

King was charged in federal court with being a felon in possession in violation of 18 U.S.C. § 922(g)(1). He moved to suppress the evidence found in what he contends was an unconstitutional search under the Fourth Amendment. The

district court denied the motion, ruling that the warrant was supported by probable cause and was sufficiently particular. King then pleaded guilty and waived all constitutional and statutory rights to appeal his conviction and sentence, but reserved the right to appeal the order denying his motion to suppress. Although his Guidelines calculation was 120 months, he was sentenced to 90-months imprisonment.

King now brings this appeal, again challenging the validity of the search warrant. Specifically, he argues that the warrant was overbroad—that there was only probable cause for the silver and gold revolver, and no other firearms. King also contends that the district court miscalculated his sentence.

We review the validity of a search warrant, as well as the validity and scope of an appeal waiver, de novo. *United States v. Underwood*, 725 F.3d 1076, 1081 (9th Cir. 2013); *Davies v. Benov*, 856 F.3d 1243, 1246 (9th Cir. 2017).

## II.

## A.

The Fourth Amendment commands that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. From this command, we draw two relevant principles.

The first is fundamental. A warrant must be supported by probable cause—meaning a "fair probability that contraband or evidence of a crime will be found in a particular place based on the totality of circumstances." *United States v. Diaz*, 491 F.3d 1074, 1078 (9th Cir. 2007)

(simplified). Put simply, it amounts to "circumstances which warrant suspicion." *Locke v. United States*, 11 U.S. 339, 348 (1813). And importantly, it requires "less . . . evidence [than that] which would justify condemnation, and may rest upon evidence which is not legally competent in a criminal trial." *United States v. Bridges*, 344 F.3d 1010, 1014–15 (9th Cir. 2003) (simplified).

The second principle is more technical. A warrant must not be overbroad. The scope of a warrant must be limited by its probable cause, *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 702 (9th Cir. 2009), and must "never include more than is covered" by that probable cause, *United States v. Whitney*, 633 F.2d 902, 907 (9th Cir. 1980).

A "magistrate's determination of probable cause should be paid great deference by reviewing courts." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (simplified). When a magistrate has found probable cause, we do not "invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." *United States v. Ventresca*, 380 U.S. 102, 109 (1965). Our duty is limited to ensuring that the magistrate had a "substantial basis" for concluding that probable cause existed. *Gates*, 462 U.S. at 238 (simplified).

Applying these principles, we conclude that the warrant here did not violate the Fourth Amendment. In the affidavit, a police officer detailed his investigation, his training and experience, and his suspicion that King was a felon in possession. The affidavit noted that King had two prior felonies: one for corporal injury to a domestic partner and another for trafficking cocaine. Despite this criminal history, the affidavit sets out that King took possession of the "large silver & gold revolver" of unknown caliber shortly after it was used in a violent domestic dispute. The officer

also explained how he suspected that other weapons might be present at King's residence since other "individuals [may] arrive at the scene of [the] search" and that, in his experience, "many of these individuals are found to be in possession of weapons." Moreover, the officer explained that, as a felon, any firearm found in King's possession would constitute evidence of a felon-in-possession offense. The officer expressed his belief that King was in violation of the felon-in-possession statute.

These facts, taken together, provided the judge with a substantial basis to authorize the broader search for "any firearm." That's because there was a "fair probability" that other firearms might be found at King's home and they would constitute evidence of a crime. *Diaz*, 491 F.3d at 1078. The affidavit demonstrated that King took the revolver to hide it from law enforcement for the domestic-abuse suspect. By concealing the "silver & gold" firearm, it raised the fair inference that King possessed other firearms. After all, the suspect wouldn't have entrusted the revolver to King if the suspect didn't believe King was willing and able to covertly store firearms. That King seemingly served as a "safe deposit box" for the suspect's firearm made it likely that King did the same for other firearms. Plus, King's criminal history meant that "any firearm" in his possession was contraband and evidence of a crime. Considering all of this, we see no violation of the Fourth Amendment in the search and seizure here.

King believes that this case is controlled by *Millender v. County of Los Angeles*, 620 F.3d 1016 (9th Cir. 2010), *rev'd sub nom. Messerschmidt v. Millender*, 565 U.S. 535 (2012). While *Millender* begins, like this case, with a disturbing incident of domestic abuse, that is the end of the similarity. In that case, police sought a search warrant against the

domestic-abuse suspect, who had threatened the victim with a "black sawed off shotgun" and fired the weapon at her. *Id.* at 1020. Importantly, the victim provided police with a photograph of the suspect with the firearm in question. *Id.* at 1027. Based on these facts alone, the warrant authorized "a search for essentially any device that could fire ammunition, any ammunition, and any firearm-related materials." *Id.* at 1025. After the arrest of the suspect and the search of his residence, the black shotgun was not found but ammunition and a different shotgun were seized. *Id.* at 1022–23. In invalidating the warrant, we reasoned the affidavit did not "set forth any evidence [that the suspect] owned or used other firearms, that such firearms were contraband or evidence of a crime, or that such firearms were likely to be present." *Id.* at 1025.

Unlike *Millender*, where the other firearm and ammunition seized did not relate to the alleged crime or the affidavit, the crime under investigation in this case warranted a broader search. First, this was a felon-in-possession investigation. As *Millender* recognized, "the possession and purchase of guns by itself does not constitute contraband or evidence of a crime." *Id.* at 1030. But not in this case. Any firearm possessed by King, as alleged in the warrant, was unlawful and constituted criminal evidence. Second, and relatedly, *Millender* authorizes "a broader search warrant" when "the warrant establishes standards that are sufficiently specific to reasonably guide the officers in avoiding seizure of protected property." *Id.* at 1025 (simplified). By setting forth that this was a felon-in-possession investigation, officers were reasonably guided that "any firearm" was not "protected property" but instead subject to search and seizure. Third, *Millender* authorizes "a search for classes of generic items if the government was not able to describe the items more particularly in light of the

information available." *Id*. at 1026 (simplified). That principle didn't apply in *Millender* since the victim provided the police with a picture of the precise weapon sought. *Id*. at 1027. Here, the police only knew the generic colors of the revolver and, in any case, all firearms found during the search would be pertinent to its investigation. Finally, *Millender* rested principally on the lack of allegations to support probable cause that other "firearms were likely to be present" at the place to be searched. *Id*. at 1025. Here, the affidavit alerted the judge that King had concealed *someone else's* firearm after it was used in a violent domestic-abuse incident. Such evidence permits the inference that King may conceal or possess other firearms and makes it likely that they would be present at his residence. Accordingly, *Millender* doesn't control this case.

The same is true of King's reliance on *United States v. Nora*, 765 F.3d 1049 (9th Cir. 2014). First off, we applied a different standard of review in that case because we found some of the evidence used to obtain the warrant was unlawfully tainted. 765 F.3d at 1058 (treating the warrant "without the usual deference owed to the magistrate's initial finding of probable cause"). Second, we found that the only untainted evidence supporting the warrant was the officers' observation of the suspect with the firearm and his prior criminal history. *Id.* at 1058. "[W]ithout more," we held, "the officers' firsthand observations of Nora with a gun in his hand did not give them reasonable grounds to believe that any additional firearms would be found in the house." *Id*. at 1059. There's more than that here. As stated, King was reported to have received and concealed a firearm for another person; that establishes "a fair probability" that King "owned [or possessed] *other* firearms." *Id*. We doubt that the domestic-abuse suspect would have given the firearm to someone completely inexperienced in possessing firearms,

especially a firearm that was just used in a crime.  It's fair to think that serving as an illicit depository of another person's firearm makes King's possession of other firearms likely.

Unlike the warrants in *Nora* and *Millender*, we see no absence of probable cause here.    While we cannot "mechanically reason that some implies more," *United States v. Weber*, 923 F.2d 1338, 1344 (9th Cir. 1990), we conclude that the warrant here sufficiently justified the search for and seizure of "any firearm."

**B.**

Even though the warrant complied with the Fourth Amendment, the good-faith exception also justifies denying the suppression motion here.  Under that exception, evidence seized under a later-invalidated warrant is admissible if the "officers conducting the search acted in good faith and in reasonable reliance on the warrant."  *United States v. Kow*, 58 F.3d 423, 428 (9th Cir. 1995).  The exception doesn't apply, conversely, if the officers' conduct showed "deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights."  *Davis v. United States*, 564 U.S. 229, 238 (2011) (simplified).  The central question is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization."  *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984).

Here, it's plain that reasonably well-trained officers would not have known that the search of King's residence for "any firearm" was in legal doubt.  Specifically, the affidavit established that the police were conducting a felon-in-possession investigation, and that King had been convicted of a serious violent felony and drug trafficking.  It further described that King concealed a firearm used in

another violent offense.  Given this, we can't say that officers should have questioned the judge's authorization to search for and seize all firearms, since any gun constituted illegal contraband and evidence of a crime in the hands of King.

Indeed, in the decision reversing our qualified immunity holding in *Millender*, the Court held that *fewer* facts—the possession and use of a gun by a gang-affiliated suspect in an assault investigation—was enough to justify the officers' execution of a warrant to broadly seize all firearms. *Messerschmidt*, 565 U.S. at 549.  Under "the particular circumstances of [that] case," the Court found that "it would not have been unreasonable for an officer to conclude that there was a 'fair probability' that the sawed-off shotgun was not the only firearm [the suspect] owned." *Id*. at 548–49. Here, more allegations support a search for multiple firearms, especially King's willingness to harbor firearms. We, therefore, affirm the district court's denial of the motion to suppress.

## III.

### A.

King also attacks his career-offender sentence enhancement.  But King is precluded from raising these arguments in this court.  It is well settled that a defendant may waive his constitutional rights, including the right to appeal, as a part of plea negotiations. *United States v. Navarro-Botello*, 912 F.2d 318, 321 (9th Cir. 1990).  We enforce the plain language of an appellate waiver when two criteria are met.  First, the language of the agreement must cover the grounds of the appeal. *United States v. Lo*, 839 F.3d 777, 783–84 (9th Cir. 2016).  Second, the waiver must have been knowingly and voluntarily made. *Id.* The

defendant bears the burden of showing that the plea agreement was not knowing and voluntary. *See United States v. Michlin*, 34 F.3d 896, 900 (9th Cir. 1994) (holding that the defendant's appellate waiver was effective because he "failed to show that his plea was not knowing and voluntary").

Here, King's claim challenging his sentence was within the scope of the plea agreement. The appellate waiver explicitly precludes King from appealing his conviction and sentence and, aside from some inapplicable exceptions, the provision only allows him to challenge the suppression motion on appeal.

King also hasn't shown that the waiver was not knowing and voluntary. First, the record belies King's assertion that his plea colloquy was insufficient under Rule 11 or that the district court did not properly inform him of his appellate waiver. Under Federal Rule of Criminal Procedure 11(b)(1)(N), the district court must inform a defendant of the terms of any appellate waiver in the plea agreement. *Lo*, 839 F.3d at 784. But technical noncompliance with that requirement is not enough to invalidate a plea under plain error review; when the record as a whole shows that the defendant otherwise waived his appellate rights knowingly and voluntarily, we will not find such error. *Id.*

No violation occurred here—technical or otherwise. At his change-of-plea hearing, King confirmed that he went through the plea agreement with his attorney, that he had all of his questions answered, and that he understood he was giving up his right to appeal except for the motion to suppress. The district court also ensured that King wasn't threatened or forced into pleading guilty or offered any other promises in exchange for his plea. It further emphasized that

King was giving up his rights "permanently." Accordingly, we find no Rule 11(b)(1) violation.

Second, it does not matter, as King claims, that he didn't know the specific arguments he could make on appeal to attempt to lower his Sentencing Guidelines range. Although the plea agreement contained a non-binding, estimated base-offense level of 26, King contends that his defense counsel had valid arguments to seek an offense level of 20. But that a defendant does not know the possible grounds of appeal does not render his appellate waiver unknowing or involuntary. *See Navarro-Botello*, 912 F.2d at 320 (explaining that the defendant "knew he was giving up possible appeals, even if he did not know exactly what the nature of those appeals might be"). Indeed, King was specifically informed of the maximum penalties for his offense and that the district court has no obligation to follow the parties' agreement in the plea or the Guidelines range at all. The plea agreement also established a preliminary Guidelines sentencing range of 92 to 115 months. Given this information, King elected to proceed with the plea and the appellate waiver. While he may regret that decision now (even though he received a sentence below the estimated Guidelines range), that doesn't make his plea unenforceable. As we have said, "[j]ust because [a] choice looks different to [a defendant] with the benefit of hindsight, does not make the choice [unknowing or] involuntary." *Id*.

## B.

King lastly urges us to allow him to withdraw his plea and enter a new agreement preserving his right to appeal his sentence because the district court violated Rule 11(c)(1) by participating in his plea negotiations.

As a threshold matter, the government contends that this claim is subsumed by his appellate waiver and we have no jurisdiction to consider it.  We disagree.  The failure to comply with Rule 11(c)(1) may be reason not to enforce an appellate waiver.  *See United States v. Brizan*, 709 F.3d 864, 866 (9th Cir. 2013); *see also United States v. Myers*, 804 F.3d 1246, 1254 (9th Cir. 2015) (analyzing whether the district court violated Rule 11(c)(1) despite appellate waiver); *United States v. Gonzalez-Melchor*, 648 F.3d 959, 962 (9th Cir. 2011) (same).  We, thus, proceed to consider this claim.  But because King did not raise this concern in the district court, we review it for plain error.  *Myers*, 804 F.3d at 1256.  That means King must show there's been an error that is plain and that affected his substantial rights. *Id.* at 1256.  To satisfy this standard, King must demonstrate a reasonable probability that, but for the Rule 11(c)(1) error, he would not have entered the plea.  *Id.*

Rule 11 prohibits the district court from participating in plea negotiations.  Fed. R. Crim. P. 11(c)(1).  Given the "unequal positions" between the judge and the accused, any degree of judicial involvement in plea negotiations raises "question[s] of fundamental fairness."  *United States v. Bruce*, 976 F.2d 552, 557 (9th Cir. 1992), *abrogated on other grounds by United States v. Davila*, 569 U.S. 597 (2013) (simplified).  As we have said, Rule 11(c)(1) prevents defendants from being coerced to plead guilty, protects the integrity of the judicial process, and preserves the court's impartiality.  *United States v. Kyle*, 734 F.3d 956, 963 (9th Cir. 2013).  Rule 11(c)(1), thus, prohibits courts from "comment[ing] on the hypothetical agreements it would or would not accept."  *Id*. (simplified).  In particular, a "judge's active participation in appellate-waiver negotiations [is] inherently coercive" given the judge's discretionary sentencing authority.  *Gonzalez-Melchor*, 648 F.3d at 964.

King points to two occasions of alleged participation: (1) the district court held an off-the-record sidebar conference on King's plea negotiations and then granted a one-week continuance so the government could seek approval of a conditional plea allowing King to appeal the suppression motion; and (2) one week later, the district court inquired why King had reservations about accepting the government's conditional plea.[1]

Neither of these instances exhibit inappropriate judicial pressure on plea negotiations. First, the district court offered the continuance after being informed that King was close to pleading guilty, but that his defense counsel mistakenly advised him that proceeding to trial was the only way to preserve his ability to challenge the suppression motion. The week-long continuance allowed the parties to research and seek a conditional plea without King having to endure a seemingly unwanted trial. Nothing in the record shows the district court applied pressure on the parties to reach any agreement. Regarding the second instance, the district court simply responded to King's counsel's suggestion that he might plead "straight up" [i.e., without a plea agreement] rather than accept the government's conditional plea. The district court noted that King "can do whatever he wants," but that the court wanted to "know the thinking behind it." After King mentioned that he was not satisfied with the government's 92-month recommendation, that was the end of it.

---

[1] The exact question was: "why would he not accept an offer of a deal because obviously the advantage there is that the government makes the recommendation and oftentimes joins in the same recommendation that defense does. You don't want that?"

We cannot describe either of these two instances as improper participation by the district court.  This is not the situation of the district court encouraging the defendant to plead guilty, committing itself to a particular type of sentence, or requiring a certain plea term.  *See Kyle*, 734 F.3d at 965.  Nothing in the court's actions raises the specter of coercion or risks the court's integrity or impartiality.  Indeed, Rule 11(c)(1) doesn't hamstring judges from engaging in commonplace interactions with defendants, managing its dockets, or asking legitimate questions.  As long as these exchanges don't cross the line into giving an express or implied judicial imprimatur on plea terms, we will not discard an otherwise acceptable plea agreement.

Moreover, King cannot show that the judge's interactions affected his substantial rights.  *See id.* at 966.  Before either of these exchanges, King made clear that he wanted to plead guilty, but also wanted to retain his right to appeal the suppression motion.  Before the second interaction, King's attorney alerted the judge that "Mr. King will enter a plea to the charge."  And although King was considering pleading "straight up," counsel stated that "either way" he was "admitting responsibility."  King then told the judge that the government was only offering a recommended sentence of 92 months when the maximum penalty was ten years—not "much of a difference" in King's view.  None of this indicates that King would have pleaded differently or gone to trial but for the district court's questions.  Instead, King "reached a favorable plea agreement with the government, avoided trial, and received a below-Guidelines sentence."  *Myers*, 804 F.3d at 1258 (finding the defendant couldn't show a reasonable probability of a different outcome under these facts).  Thus, the record does not demonstrate the district court's actions affected King's substantial rights.

**IV.**

The district court's denial of King's motion to suppress is **AFFIRMED**, and the remainder of his appeal is **DISMISSED**.