**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JASON ERIC DAVID, AKA
Jason David, AKA Jason E.
David,
*Defendant-Appellant.*

No. 20-50274

D.C. Nos.
2:20-cr-00122-RGK-1
2:20-cr-00122-RGK

OPINION

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted February 16, 2022
Pasadena, California

Filed June 15, 2022

Before: Daniel A. Bress and Patrick J. Bumatay, Circuit
Judges, and Sharon L. Gleason,* District Judge.

Opinion by Judge Bumatay

---

* The Honorable Sharon L. Gleason, United States District Judge for
the District of Alaska, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed a custodial sentence in a case in which the defendant argued on appeal that his appellate waiver is unenforceable because the district court violated Fed. R. Crim. P. 11(b)(1)(N), which provides that the district court must address the defendant personally and determine that the defendant understands the terms of any appellate waiver.

Because the defendant failed to object to the alleged violation during the plea colloquy, the panel reviewed for plain error. Noting that the defendant doesn't claim that he did not knowingly and voluntarily agree to the appellate waiver, the panel wrote that the record shows that the defendant understood that he was waiving his right to appeal his sentence. The panel cited several factors in the record including the plea agreement's specificity as to the scope of the appellate waiver, counsel's certification of her discussion and advice concerning the consequences of the entering the agreement, the defendant's assurances during the change-of-plea hearing and plea colloquy that he understood the proceedings and the agreement, and the fact that the government raised the appellate waiver before the end of the change-of-plea hearing. The panel wrote that nothing in the record supports a reasonable probability that the defendant would not have entered the guilty plea had the district court separately addressed the appellate waiver as Rule 11 requires. The panel concluded that given these facts, and on

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

this record, the plea colloquy at most constituted a technical violation of Rule 11, but not a plain error that affected the defendant's substantial rights or an error that seriously affected the fairness or integrity of his plea.

The panel thus held that the appellate waiver is enforceable, and did not consider the defendant's challenges to his custodial sentence.

In a concurrently filed memorandum disposition, the panel addressed the defendant's objections to conditions of his supervised release—affirming in part, and vacating and remanding in part.

## COUNSEL

Kathryn A. Young (argued), Deputy Federal Public Defender; Cuauhtemoc Ortega, Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; for Defendant-Appellant.

Aaron Frumkin (argued), Assistant United States Attorney; Bram M. Alden, Chief, Criminal Appeals Section; Tracy L. Wilkison, Acting United States Attorney; United States Attorney's Office, Los Angeles, California; for Plaintiff-Appellee.

**OPINION**

BUMATAY, Circuit Judge:

After pleading guilty to charges stemming from possessing stolen mail, credit cards, and other financial devices, Jason David was sentenced to 36 months in prison. He now appeals his custodial sentence. But, under the terms of David's plea agreement, he waived the right to appeal his sentence. David argues we should invalidate the waiver because the district court violated Rule 11 of the Federal Rules of Criminal Procedure. That Rule provides that the district court must address the defendant "personally" and determine that the defendant understands the terms of any appellate waiver. Fed. R. Crim. P. 11(b)(1)(N). David asserts that the district court failed to follow this requirement and so he should be permitted to appeal his sentence.

Under plain-error review, we generally enforce an appellate waiver unless the defendant's substantial rights were affected by any Rule 11(b)(1)(N) error. *See United States v. King*, 985 F.3d 702, 711–12 (9th Cir. 2021). Because the record shows that David understood the terms of his plea agreement, we conclude that David cannot overcome the plain-error standard and affirm his custodial sentence.[1]

## I.

In July 2019, police were called to a BevMo! Wine and Liquor store in Burbank, California, on a report of a possible

---

[1] David also challenges certain conditions of his supervised release. In a concurrently filed memorandum disposition, we address David's objections to those conditions, and we affirm in part and vacate and remand in part.

theft.  After arriving at the parking lot, an officer saw David reaching his arm through the broken window of a white Ford Explorer.  David claimed that his key fob was not working and so was trying to unlock the car through the window.  The officer asked David for his identification and David complied.  After a records check, the officer discovered that David had an outstanding misdemeanor arrest warrant for traffic violations and arrested him.

Officers then searched a backpack David was wearing and the Explorer.  Inside the backpack, officers found mail belonging to others and a glass drug pipe.  Inside the Explorer, officers found more stolen mail, identification cards, and other financial information.  In total, the police discovered 251 pieces of stolen mail; four California driver's licenses; eight debit and credit cards; 69 checks; and 37 social security numbers.  David admitted that the items were his and that they were stolen.

David was charged with (1) possession of stolen mail, 18 U.S.C. § 1708; (2) possession of 15 or more unauthorized access devices, 18 U.S.C. § 1029(a)(3); and (3) aggravated identity theft, 18 U.S.C. § 1028A(a)(1).  David pleaded guilty to the first two counts with a plea agreement.  In the plea agreement, the government and David agreed that his offense level would be 13 after accepting responsibility and that both parties reserved the right to argue for more enhancements or departures under the U.S. Sentencing Guidelines ("USSG").

The plea agreement also contained an appellate waiver. As part of the waiver, David agreed to "give[] up the right to appeal" certain parts of his case such as (1) the "calculations used to determine and impose any portion of the sentence;" (2) "the term of imprisonment imposed by the Court;" and (3) "[the] conditions of probation or supervised release

imposed by the Court . . . [as] set forth in General Order 18-10 of this Court[.]"  He also waived his right to appeal his conviction.

In an attachment to the plea agreement, David certified that he read the agreement "in its entirety" and that he "carefully and thoroughly discussed every part of it with [his] attorney."  He also certified that he understood the terms of the agreement and that he wished to plead guilty to benefit from the promises in the agreement.  David's counsel similarly signed a certification attesting that she "thoroughly discussed every part of th[e] agreement" with David and that she advised him "of the consequences of entering into th[e] agreement."

David later appeared before the district court to enter his guilty plea.  At the outset of the change-of-plea hearing, David and the district court discussed his knowledge of the plea agreement:

> COURT:  Have you been able to read that plea agreement?
>
> DAVID:  My attorney and I went over it, yes.
>
> COURT:  Okay.  And you're satisfied with her advice?
>
> DAVID:  Absolutely.
>
> COURT:  And you—you've gone over the whole agreement and you understand that agreement; is that correct?

DAVID:    Yes.

COURT:    And you want to enter into it
               today?

DAVID:    I do.

The district court also noted how important it was for David to understand what was happening at the hearing and asked David to "stop" the district court if he had any questions.  David responded, "[a]bsolutely."  The district court then went over the charges in the plea agreement, the factual basis of the offenses, the statutory penalties for the offenses, and the rights he was giving up by pleading guilty. David said he understood the charges, the penalties, and his trial rights.  In response to David's answers, the district court commented that he "seemed to be very knowledgeable" of what was happening at the hearing.  After finding that David had knowingly and voluntarily waived his rights and had the consequences of the plea agreement explained to him, the district court accepted the guilty plea and plea agreement.

The district court then began to set a sentencing date when the prosecutor interjected—"[j]ust very briefly, Your Honor. I apologize. I probably missed this, but just for the record, the plea agreement contains waivers for appeal [sic] on pages 11 through 13."  The district court responded, "[y]es, and it's in the plea agreement."  Both the prosecutor and defense counsel thanked the court, and the hearing was concluded.  Defense counsel raised no objections and David asked no further questions.

Two months later, the district court sentenced David.  At sentencing, David objected to a two-level enhancement for possession of an "authentication feature" under USSG § 2B1.1(b)(11)(A)(ii), which was recommended by the

presence report and supported by the government. The district court overruled the objection, which led to an offense level of 15 and a Guidelines sentencing range of 41 to 51 months based on David's criminal history. The district court varied below the Guidelines range and imposed a sentence of 36 months.

David now appeals his custodial sentence. At the outset, he argues that because the district court violated Rule 11(b)(1)(N), his appellate waiver is unenforceable. On the merits, he contends that the government had agreed to recommend a certain base offense level under the plea agreement and that the district court improperly applied the two-level enhancement for use of an authentication feature.

Because David's attacks on his custodial sentence are covered by the appellate waiver and we generally do not exercise our jurisdiction to review the merits of an appeal with a valid waiver, *see United States v. Gonzalez-Melchor*, 648 F.3d 959, 962 (9th Cir. 2011), we first turn to compliance with Rule 11(b)(1)(N).

## II.

Federal Rule of Criminal Procedure 11(b)(1)(N) requires a district court to "inform a defendant of the terms of any appellate waiver in the plea agreement." *King*, 985 F.3d at 711 (simplified). In particular, Rule 11 provides:

> Before the court accepts a plea of guilty[,] . . . the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, . . . the terms of any plea-

agreement provision waiving the right to appeal or to collaterally attack the sentence[.]

Fed. R. Crim. P. 11(b)(1)(N).

When a defendant fails to object to an alleged Rule 11 violation during the plea colloquy, we review for plain error. *United States v. Ma*, 290 F.3d 1002, 1005 (9th Cir. 2002). A plain error entails (1) an error, (2) that is plain, and that affects both (3) substantial rights, and (4) the fairness, integrity, or public reputation of judicial proceedings. *United States v. Myers*, 804 F.3d 1246, 1257 (9th Cir. 2015) (simplified). To satisfy this standard, the defendant must show a "reasonable probability" that, but for the Rule 11 error, "he would not have entered the [guilty] plea." *Id.* (simplified). But where the record as a whole reflects that the defendant "understood the right to appeal his sentence," despite the omission of a Rule 11 advisal, we will not find that the defendant's substantial rights were affected. *See United States v. Arellano-Gallegos*, 387 F.3d 794, 797 (9th Cir. 2004).

David argues that his appellate waiver is unenforceable because the district court did not comply with Rule 11(b)(1)(N). But since he failed to object to the alleged violation during the plea colloquy, he must satisfy the plain-error standard. We hold that he cannot do so.

To begin, we note that David doesn't claim that he did not knowingly and voluntarily agree to the appellate waiver. His argument rests only on noncompliance with Rule 11(b)(1)(N). And the record shows that David understood that he was waiving his right to appeal his sentence. So David fails to show that his substantial rights were affected.

We start with the plea agreement itself. The document sets forth the scope of the appellate waiver and specifies what parts of David's sentence he may and may not appeal. With the signing of the plea, David also separately certified that he read the entire agreement, carefully and thoroughly discussed it with his attorney, and understood the terms of the agreement. His counsel likewise certified that she thoroughly discussed the agreement with David and advised him of the consequences of entering the agreement.

Next, we have the change-of-plea hearing where the district court noted that David seemed "very knowledgeable" about the proceedings. At the start of David's plea hearing colloquy, the district court inquired if David had the chance to read the plea agreement. David reiterated that he reviewed the entire plea agreement with his attorney. When asked if he was satisfied with his attorney's advice, David replied, "[a]bsolutely." The district court again made sure that David had "gone over the whole agreement" and that he "underst[ood] th[e] agreement[.]" David again responded affirmatively. The district court then emphasized how important it was that David understood the proceedings, and David agreed to alert and stop the district court if he had any questions.

The district court and David then engaged in an extensive colloquy about David's trial rights, the nature of the charges, and the consequences of a guilty plea. David confirmed that he understood the charges and rights he was giving up by pleading guilty. The district court then went over the sentencing arrangement David and the government agreed to in the plea agreement and explained how that arrangement would not bind the court. Again, David affirmed he understood. At the end of the colloquy, the district court commented that David "seem[ed] to be very

knowledgeable of what [he's] doing here." The district court then pressed to ensure that David was "freely and voluntarily" accepting the plea agreement, and the court was satisfied that he was.

What's more, the government raised the appellate waiver before the end of the change-of-plea hearing. The prosecutor interrupted the court's closing remarks, stating, "but just for the record, the plea agreement contains waivers for appeal on pages 11 through 13." And the district court acknowledged, "Yes, and it's in the plea agreement." While this exchange fails to comply with Rule 11(b)(1)(N), it accurately reflects the terms of the plea agreement that David had repeatedly said he understood. Neither David nor his counsel raised any questions or objections. In short, David demonstrated strong knowledge of the consequences of his plea agreement, concluded it was in his best interest, and was "[a]bsolutely" satisfied with his counsel's advice. Nothing in the record supports a "reasonable probability" that he would not have entered the guilty plea had the district court separately addressed the appellate waiver as Rule 11 requires. *See Myers*, 804 F.3d at 1257.

Given these facts, David has "failed to show that the error seriously affected the fairness or integrity of h[is] plea." *Ma*, 290 F.3d at 1005. In *Ma*, as here, the district court was "meticulous in observing the requirements for taking a plea in accordance with Rule 11," except for the Rule 11(b)(1)(N) requirement. *Id.* Rather than address the appellate waiver itself, the district court asked the prosecutor to summarize the plea agreement, including the appellate waiver. *Id.* Even though Rule 11(b)(1)(N) "was not complied with," we looked to the "whole record" to determine the effect of the "Rule 11 error on a defendant's substantial rights." *Id.* We were satisfied there was no

serious effect because the defendant affirmed that the prosecutor's summary reflected her understanding of the agreement and, like David, acknowledged in writing that she read and understood the plea agreement. *Id.*

David compares his case to *Arellano-Gallegos*, 387 F.3d at 794, in which we found plain error after a Rule 11(b)(1)(N) violation. But *Arellano-Gallegos* is distinguishable. In that case, the magistrate judge who accepted the plea asked only "general questions," and the case turned on our conclusion that "there [wa]s no evidence in the record that would demonstrate that [the defendant] knew he was waiving the right to appeal his sentence." *Id.* at 797 (emphasis omitted). As discussed above, the record here is more substantial. And in *Arellano-Gallegos*, we were concerned that there was no mention of the appellate waiver "in open court" until the district court "casual[ly]" mentioned it at the sentencing hearing "some six months after the plea had been accepted." *Id.* Here, by contrast, the appellate waiver was raised just moments after the Rule 11 plea colloquy and before the change-of-plea hearing concluded.

On this record, we conclude that the district court's plea colloquy at most constituted "a technical violation of Rule 11," *id.*, but not a plain error that affected David's substantial rights. *See also United States v. Jimenez-Dominguez*, 296 F.3d 863, 868 (9th Cir. 2002) ("the district court's otherwise scrupulous compliance with Rule 11, coupled with the defendant's responses during the colloquy, demonstrates the technical nature of the violation").

We thus hold that the appellate waiver in David's plea agreement is enforceable and do not consider David's challenges to his custodial sentence.

## III.

**AFFIRMED** in part and **VACATED** and **REMANDED** in part as stated in the concurrently filed memorandum disposition.