**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JUN 26 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   21-30115 |
| Plaintiff-Appellee, | D.C. No. 4:18-cr-06008-EFS-2 |
| v. | |
| REYNALDO PEREZ MUNOZ, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Eastern District of Washington
Edward F. Shea, District Judge, Presiding

Argued and submitted June 6, 2023
Seattle, Washington

Before:  SCHROEDER, CALLAHAN, and BEA, Circuit Judges.

Defendant-Appellant Reynaldo Perez Munoz pleaded guilty to one count of

conspiracy to distribute controlled substances, *see* 21 U.S.C. §§ 841, 846, and three

counts of money laundering, *see* 18 U.S.C. § 1956(a)(1)(B)(i). The district court

accepted Munoz's guilty plea, held a sentencing hearing, and then sentenced him to

26 years in prison with 7 years of supervised release. On appeal, Munoz seeks to

---

\*      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

withdraw his guilty plea or, in the alternative, to obtain a vacatur of his sentence and a remand for resentencing. Because the parties are familiar with the facts of this case, we recite them only as necessary to the disposition of this appeal. We have jurisdiction, *see* 28 U.S.C. § 1291, and we affirm in part and dismiss in part.

1.	Munoz argues that the district court violated Rule 11 of the Federal Rules of Criminal Procedure in four different ways. But because Munoz failed to raise these issues before the district court, we review them for plain error. *See United States v. Monzon*, 429 F.3d 1268, 1271 (9th Cir. 2005). Under that standard, each of Munoz's four Rule 11 challenges fail.

a.	The district court did not plainly err in advising Munoz of his constitutional rights. *See* Fed. R. Crim. P. 11(b)(1). Contrary to Munoz's assertions, the district court advised Munoz that he had a right to a jury trial, to be free from self-incrimination, and to confront and examine witnesses. The district court's deviation from the literal text of Rule 11 is not error, *see* Fed. R. Crim. P. 11(h), and even if it were, Munoz has not met his burden in demonstrating a reasonable probability that he would have gone to trial absent any such deviation, *see Monzon*, 429 F.3d at 1271–72; *United States v. Jimenez-Dominguez*, 296 F.3d 863, 868–69 (9th Cir. 2002).

b.	The district court did not plainly err in advising Munoz of the nature of the charges against him. *See* Fed. R. Crim. P. 11(b)(1)(G). We reject Munoz's three

arguments to the contrary.

i.      First, Munoz argues that the district court failed to advise him of the mens rea element for conspiracy to distribute controlled substances. He claims this count requires proof of specific intent to commit a violation of 21 U.S.C. § 841(a). True, the government is required to prove that the defendant "had the requisite intent necessary for a conviction of the underlying offense." *United States v. Collazo*, 984 F.3d 1308, 1320 (9th Cir. 2021) (en banc). But this does not mean that the government must prove that Munoz had the specific intent to distribute controlled substances personally. *Id.* at 1319. It means that the government must prove that Munoz entered into an agreement that *someone* would distribute the controlled substances, *id.* at 1320, and that Munoz knowingly or intentionally "effectuate[d] the object of" that agreement. *Id.* at 1319 (cleaned up). The district court so advised Munoz. It stated during the colloquy that a required element of conspiracy is "knowing of at least one of its objects and intending to help accomplish it," and Munoz stated that he understood.

ii.     Second, Munoz argues that he denied possessing, selling, or explicitly discussing drug sales with other members of the conspiracy. He argues his denial should have alerted the district court that he did not understand the nature of the conspiracy charge against him. Thus, he contends, the district court did not adequately inform him "of the *nature* (as opposed to the formal legal description) of

3

the charges against him." *United States v. Bruce*, 976 F.2d 552, 560 (9th Cir. 1992), *abrogation on other grounds recognized by United States v. King*, 985 F.3d 702, 712 (9th Cir. 2021).

The district court read the conspiracy charge as alleged in the superseding indictment, and then explained the charged conspiracy related to "what was found in [Munoz's] home" and involved a "conspiracy to distribute" specific drugs in specific amounts with specific people during a specific date range. This involved an explanation that the government was alleging that Munoz "entered into an agreement with one or more persons to commit the crime of distribution of" controlled substances. Given that Munoz repeatedly testified under oath that he understood the district court's explanation of the conspiracy charge, we "would have to presume that [Munoz] did not understand the court's questions when he testified under oath that he did." *United States v. Timbana*, 222 F.3d 688, 704 (9th Cir. 2000). And even were the district court's advisement plainly erroneous, Munoz again fails to meet his burden in proving a reasonable probability that he would have gone to trial absent any such error. *See Monzon*, 429 F.3d at 1271–72.

iii.     Third, Munoz argues that the district court erroneously advised him of the elements for promotional money laundering, *see* 18 U.S.C. § 1956(a)(1)(A), instead of the elements for concealment money laundering, *see id.* at § 1956(a)(1)(B). Munoz contends this is reversible error because he was charged

4

with the latter and not the former. We disagree. The district court plainly advised Munoz on the elements for both promotional and concealment money laundering. The district court's overstatement of the government's burden at trial would serve as an inducement to go to trial, not to plead guilty. Munoz cites nothing in the record suggesting that he subjectively thought otherwise. Thus, any error here did not affect Munoz's substantial rights.

c. The district court did not plainly err in assessing the voluntariness of his plea. *See* Fed. R. Crim. P. 11(b)(2). When read in context of the plea proceedings as a whole, the district court's statement that, "I have no choice but to put you in prison for 10 years," clearly communicated that 10 years was the minimum sentence, not the maximum.

d. The district court did not plainly err in developing a factual basis for the plea. *See* Fed. R. Crim. P. 11(b)(3); *United States v. Nickle*, 816 F.3d 1230 (9th Cir. 2016). The district court in this case recited more detail than the district court did in *Nickle*, 816 F.3d at 1233–34. Thus, it would have been error for the district court to *reject* Munoz's plea under these circumstances.

We therefore conclude that the district court did not plainly err under Rule 11 of the Federal Rules of Criminal Procedure in accepting Munoz's guilty plea.

2. The district court did not violate *Apprendi v. New Jersey*, 530 U.S. 466 (2000). A count in the indictment (to which Munoz pleaded guilty) alleged a

conspiracy to distribute 50 grams of methamphetamine, 5 kilograms of cocaine, and 1 kilogram of heroin. A conspiracy to distribute such a quantity of drugs carries a maximum statutory penalty of life imprisonment. *See* 21 U.S.C. § 841 (b)(1)(A)(i), (ii), (viii). *Apprendi* was not violated because the drug types and quantities were alleged in the indictment, *see United States v. Jordan*, 291 F.3d 1091, 1093–97 (9th Cir. 2002), and were repeatedly admitted to by Munoz during the plea colloquy, *see United States v. Thomas*, 355 F.3d 1191, 1198–99 (9th Cir. 2004).

3.      The district court correctly calculated Munoz's total offender level to be 43, which carries an advisory range of life imprisonment. *See* U.S.S.G. Ch. 5, Pt. A. We reject Munoz's four arguments to the contrary.

a.      First, the district court did not misinterpret the sentencing guideline for money laundering, which requires application of the sentencing guideline for "the underlying offense from which the laundered funds were derived" so long as the defendant "committed the underlying offense" or "would be accountable for the underlying offense . . . ." U.S.S.G. § 2S1.1(a)(1). Nor did the district court misinterpret Application Note 2(B), which requires "additional involvement" from the defendant in the underlying offense beyond laundering money from the offense. U.S.S.G. § 2S1.1, App. Note 2(B). Munoz's contention that there is "no evidence" of his involvement in a drug-distribution conspiracy is contradicted by the testimony

and documentary evidence submitted at his sentencing hearing, as well as the factual basis that he filed in support of his guilty plea.

b. Second, the district court did not misinterpret Application Note 2(C) to the money laundering guideline, which provides that any "Chapter Three adjustment" to an offender score "be determined based on . . . the laundering of criminally derived funds[] and not on the underlying offense from which the laundered funds were derived." U.S.S.G. § 2S1.1(a)(1), App. Note 2(C). The district court's finding supporting its chapter three adjustment—a 4-point upward adjustment for Munoz's role as an "organizer or leader" of criminal activity, *see* U.S.S.G. § 3B1.1—was not restricted to the conspiracy to distribute drugs charge. Its finding regarding Munoz's organizer or leader role plainly included Munoz's role in organizing or leading money-laundering activity as well.

c. Third, the district court's finding that Munoz was an "organizer or leader" of money laundering activity that involved either "five persons" or "was otherwise extensive," *see* U.S.S.G. § 3B1.1(a), is not clearly erroneous. A witness testified at Munoz's sentencing hearing that "[t]here were multiple other people identified by moniker that [investigators] could never identify, and there were others that [investigators] identified that we never had enough to charge." That witness flatly testified that he believed there were more than five people involved in the criminal enterprise. Another witness testified that, based on Munoz's phone calls, it

7

was clear that "Munoz was directing the activities of other individuals to pick up money from other locations . . . ." She further opined that Munoz "was directing the receipt of the drug shipments as well as the disbursement of the drug shipments and also the receipt and disbursement of money." That witness also observed that Munoz's drug ledgers contained references to "Sosio, Pedro Walla, Gordito," whom she believed were other members of the drug trafficking organization. It is reasonable to infer from this testimony that Munoz organized or led money laundering activity that involved five or more people or was otherwise extensive. Thus, the factual finding supporting the district court's decision to apply the 4-point upward adjustment from guideline § 3B1.1 is not clearly erroneous. *See United States v. Hinkson*, 585 F.3d 1247, 1262–63 (9th Cir. 2009) (en banc); *see also United States v. Valle*, 940 F.3d 473, 478 (9th Cir. 2019) (applying *Hinkson*, 585 F.3d at 1262, in the context of sentencing findings).

d.      Fourth, the district court made adequate factual findings to provide meaningful appellate review. *See* Fed. R. Crim. Pro. 32(i)(3)(B). The district court's calculation of Munoz's offender score is straightforwardly stated in the record, as are the district court's factual findings supporting that calculation.

4.      The district court did not abuse its discretion in imposing a 26-year sentence with 7 years of supervised release. In accordance with 18 U.S.C. § 3553, the district court considered Munoz's particular characteristics, considered the kinds

of sentences available, considered the need for a sentence to reflect the seriousness of Munoz's offense, to provide deterrence, and protect the public, and considered Munoz's medical needs. The sentencing range was life imprisonment. U.S.S.G. Ch. 5, Pt. A. The government sought a sentence of 40 years, and the probation officer recommended a sentence of 30 years. The district court did not abuse its discretion in imposing an even lower sentence of 26 years with 7 years of supervised release.

5. The record is insufficiently developed to review Munoz's ineffective assistance of counsel ("IAC") claim on direct appeal. Munoz argues that his trial counsel was ineffective because he allegedly advised Munoz to reject the government's plea deal and then allegedly advised him to plead guilty anyway. Munoz also faults his counsel for failing to object to Rule 11 errors during the plea colloquy, for failing to make certain objections at the sentencing hearing, and for withdrawing an objection to the base offender level calculation. The general rule is that IAC claims may not be reviewed on direct appeal. *United States v. Jeronimo*, 398 F.3d 1149, 1155 (9th Cir. 2005), *abrogated on other grounds by United States v. Jacobo Castillo*, 496 F.3d 947, 957 (9th Cir. 2007) (en banc). This general rule is subject to two exceptions, "[b]ut neither of these exceptions apply here" because "the record contains no evidence from [Munoz's trial counsel]." *Id.* at 1156. We are thus unable to determine whether Munoz's trial counsel's "representation fell below an objective standard of reasonableness" or whether any such errors prejudiced

9

Munoz's defense. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). This part of Munoz's appeal is dismissed without prejudice so that Munoz may pursue his IAC claim in post-conviction proceedings if he chooses to do so.

**AFFIRMED IN PART, DISMISSED IN PART.**